Oral Argument Requested

# 26-234

UNITED STATES COURT of APPEALS

for the SECOND CIRCUIT

MICHAEL J. EISENBERG, Esq.,

*Plaintiff-Appellant,*

*-against-*

NEW YORK CITY DEPARTMENT OF EDUCATION; NAMITA DWARKA, in her official and individual capacity; CARLYN ST. AUBAIN, in her official and individual capacity; ALLISSA CREA MASON, in her official and individual capacity; VASILIOS MANOLIOS, in his official and individual capacity; HENRI HUEZO, in his official and individual capacity; AND MOISES MORALES, in his official and individual capacity;

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK (DISTRICT COURT DOCKET NO. 24-CV-01661)

APPELLANT BRIEF

**TABLE OF CONTENTS**


- I. PRELIMINARY STATEMENT……………………………………………..…1
- II. JURISDICTIONAL STATEMENT…………………………………..……..2
- III. STATEMENT OF THE ISSUES PRESENTED FOR REVIEW…………..…3
- IV. STATEMENT OF THE CASE………………………………………….5
- V. STATEMENT OF FACTS……………………………………………….6
- VI. STATEMENT OF PROCEDURAL PRESERVATION….………………..14
- VII. SUMMARY OF ARGUMENT…………………………………………17
- VIII. LEGAL ARGUMENT……………………...……………………..19
  - **POINT I**: The District Court Erred by Applying an Abrogated "Materially Adverse" Standard Rather Than Muldrow's "Some Harm" Test…………………………………………………………....19
  - **POINT II**: The District Court Erred De Novo and Committed Reversible Error under Rule 12(b)(6) by Refusing to Credit Well-Pleaded Factual Allegations, Systematically Misconstruing Plaintiff-Appellant's Argument, and Fabricating a False Causal Timeline Never Proposed……………………..……………………………………...23
  - **POINT III**: The District Court Erred De Novo under Rule 12(b)(6) by Applying a Summary-Judgment Standard, Miscalculating Summer Tolling, and Retroactively Stripping Pro Se Special Solicitude...…………………..39
  - **POINT IV**: The District Court Erred in Accepting Defendants-Appellees' Illusory Production as "Possession" and Abused Its Discretion by Uncritically Replicating Defendants-Appellees' Unsubstantiated Claims in Error…44
  - **POINT V**: The District Court Erred in Its July 18, 2025 Order by Misusing Judicial Notice to Import Extrinsic Material, Re-Write the Causal Timeline, and Resolve Disputed Facts against Plaintiff..............................................46
  - **POINT VI**: The District Court Erred by Minimizing Systemic Retaliation and Physical Assault as Mere Workplace "Quarrels" and Conducting Impermissible Off-Record Internet Research………………………………………..48
  - **POINT VII**: The District Court Applied a Legally Flawed Standard Under Title IX by Ruling That the DOE Lacks Substantial Control Over Its Closed @wcbryanths.org and Current @schools.nyc.gov Email Workspace……………………………………………………………50
  - **POINT VIII**: The District Court Abused Its Discretion under Rules 59(e) and 60(b) by Deploying a Flawed Mathematical Timeline to Evade Review of Defendant Misconduct……………………………………….……52
  - **POINT IX:** The District Court Violated Procedural Due Process by Dismissing the Action with Prejudice while Material Requests Remained Frozen before the Magistrate Court………………………………………………...56

  - **POINT X**: The District Court Abused Its Discretion and Erred as a Matter of Law in Denying Plaintiff's Timely Rule 59(e) and 60(b)(3) Motion by Improperly Usurping the Role of the Jury and Adopting Defendants' Material Misrepresentations Concerning the Investigation Timeline……………………………………….………………57
  - **POINT XI**: To Preserve the Public Appearance of Justice under 28 U.S.C. § 2106, This Matter Must Be Reassigned to a Different District Judge Upon Remand…………………………….……….……………………62
- IX. CONCLUSION AND RELIEF SOUGHT……………………….……64

## TABLE OF AUTHORITIES

### Cases

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)....................................................26, 58
*Bank v. Alleviate Tax, LLC*, (E.D.N.Y. 2024)……………………………………………….42
*Bausch v. Stryker Corp*., 630 F.3d 546 (7th Cir. 2010)……………………………………..15
*Berger v. United States*, 87 F.3d 60 (2d Cir. 1996)..............................................................15
*Bernheim v. Litt*, 79 F.3d 318 (2d Cir. 1996)…………………………………………….36, 39
*Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 889 (2009).............................................62
*Caraballo-Caraballo v. Correctional Admin*., 892 F.3d 53 (1st Cir. 2018)..........................21
*Catskill Dev., LLC v. Park Place Ent. Corp.*, 286 F. Supp. 2d 309 (S.D.N.Y. 2003)...........16
*Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ*., 444 F.3d 158 (2d Cir. 2006)..........36–37, 40
*Clarke-Green v. N.Y.C. Dep't of Educ*., 2019 WL 13149583 (E.D.N.Y., Mar. 20, 2019)....20, 30
*Clue v. Johnson*, 179 F.3d 57 (2d Cir. 1999)……………………………………………….36
*Cresci v. Mohawk Valley Cmty. Coll*., 693 F. App'x 21 (2d Cir. 2017)..................................15
*Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ*., 526 U.S. 629 (1999)............50
*Davis v. Orange Cnty*., 2024 WL 3507722 (11th Cir. July 23, 2024)....................................22
*Doe v. Sacks*, 714 F. Supp. 3d 402 (S.D.N.Y. 2024)...........................................................51–52
*Erickson v. Pardus*, 551 U.S. 89 (2007)……………………………………………………57
*Espinal v. Goord*, 558 F.3d 119 (2d Cir. 2009)…………………………………………41–42
*Faber v. Metro. Life Ins. Co*., 648 F.3d 98 (2d Cir. 2011)................................................15, 27, 35
*Fine v. Ryan Int'l Airlines*, 305 F.3d 746 (7th Cir. 2002)........................................................22
*Garcetti v. Ceballos*, 547 U.S. 410 (2006)...........................................................................37
*Gorman-Bakos v. Cornell Cooperative Extension*, 252 F.3d 545 (2d Cir. 2001)......................41
*Hazel-Atlas Glass Co. v. Hartford-Empire Co*., 322 U.S. 238 (1944)....................................58
*In re Hain Celestial Grp., Inc. Sec. Litig*., 20 F.4th 131 (2d Cir. 2021).................................57, 63
*In re Marc Rich & Co., A.G.*, 707 F.2d 663 (2d Cir. 1983).......................................................44
*In re Tremont Sec. Lawsuit*, 2013 WL 5179074 (S.D.N.Y. Sept. 16, 2013).............................16
*Jackler v. Byrne*, 658 F.3d 225, 241 (2d Cir. 2011)..............................................................37–39
*James v. Booz-Allen & Hamilton, Inc*., 368 F.3d 371 (4th Cir. 2004).......................................20
*John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc*., 588 F.2d 24 (2d Cir. 1978)................56
*Klipsch Grp., Inc. v. eBay Inc*., 829 F.3d 254 (2d Cir. 2016)...................................................17
*Knopf v. Esposito*, 829 F. App'x 526 (2d Cir. 2020)..............................................................56
*Lane v. Franks*, 573 U.S. 228 (2014)...................................................................................36, 38–39
*Littlejohn v. City of New York*, 795 F.3d 297 (2d Cir. 2015)....................................................29
*Lonsdorf v. Seefeldt*, 47 F.3d 893 (7th Cir. 1995)..................................................................61
*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160 (2d Cir. 2015)...........................................................................................15, 23, 26, 35, 40, 47, 58, 63
*Matthews v. City of New York*, 779 F.3d 167, 174 (2d Cir. 2015).............................................38

*Mitchell v. Planned Parenthood of Greater N.Y., Inc*., 2024 WL 3849192 (S.D.N.Y. Aug. 16, 2024)……………………………………………………………………………….…….21
*Montero v. City of Yonkers*, 890 F.3d 386 (2d Cir. 2018)...........................................................36
*Muldrow v. City of St. Louis*, 601 U.S. 346 (2024)................................1, 3, 17, 19–23, 29, 50, 65
*Muto v. CBS Corp*., 668 F.3d 53 (2d Cir. 2012)...........................................................................56
*New Jersey Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*, 709 F.3d 109 (2d Cir. 2013)…………………………………………………………………………………31
*Oliver Schools, Inc. v. Foley*, 930 F.2d 248 (2d Cir. 1991)........................................................15
*Pangburn v. Culbertson*, 200 F.3d 65 (2d Cir. 1999)..........................................................15, 47
*Peccia v. Cal.Dep't of Corr. &P Rehab*., 2024 WL 1985817 (9th Cir. May 1, 2024)................22
*Peifer v. Bd. of Prob. & Parole*, 1.4th 270 (3d Cir. 2024).........................................................22
*Ronzani v. Sanofi S.A*., 899 F.2d 195 (2d Cir. 1990)...................................................................16
*SEC v. Collins & Aikman Corp*., 256 F.R.D. 403 (S.D.N.Y. 2009)................................17, 44–45
*Shcherbakovskiy v. Da Capo Al Fine, Ltd*., 490 F.3d 130 (2d Cir. 2007).................................56
*Staehr v. Hartford Fin. Servs. Grp., Inc*., 547 F.3d 406 (2d Cir. 2008).....................................31
*State Street Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158 (2d Cir. 2004)....……………………………………………………………………16, 53, 55, 58, 61
*Sutera v. Schering Corp*., 73 F.3d 13, 18 (2d Cir. 1995)................................................15, 47, 56
*Swierkiewicz v. Sorema N.A*., 534 U.S. 506 (2002)..............................................................29, 47
*Tellabs, Inc. v. Major Issues & Rights, Ltd*., 551 U.S. 308 (2007)...........................................27
*Tracy v. Freshwater*, 623 F.3d 90 (2d Cir. 2010).....……………………………………….43
*Trebor Sportswear, Inc. v. The Limited, Inc*., 865 F.2d 506, 511………………………15, 47, 56
*United States v. International Brotherhood of Teamsters*, 247 F.3d 370 (2d Cir. 2001)............16
*United States v. Robin*, 553 F.2d 574 (2d Cir. 1976)...............................................4, 19, 62–63, 65
*Vega v. Hempstead Union Free Sch. Dist*., 801 F.3d 72 (2d Cir. 2015)....................................37
*Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375 (2d Cir. 1995).........................................40
*Warren v. Gavin*, 219 F.3d 111 (2d Cir. 2000)...............……………………………………..16
*Weintraub v. Bd. of Educ*., 593 F.3d 196, 203–04 (2d Cir. 2010).............................................38
*West v. Goodyear Tire & Rubber Co*., 167 F.3d 776 (2d Cir. 1999)........................................17
*Wieder v. Skala*, 80 N.Y.2d 628, 635-36 (1992).......................................................................39
*Williams v. R. H. Donnelley, Corp*., 368 F.3d 123 (2d Cir. 2004)...........................................21
*Zeno v. Pine Plains Cent. Sch. Dist*., 702 F.3d 655 (2d Cir. 2012).........................................52
*Zoulas v. N.Y.C. Dep't of Educ*., 400 F. Supp. 3d 25 (S.D.N.Y. 2019).................................20, 30

**Statutes**

20 U.S.C. § 1681 et seq. (Title IX of the Education Amendments of 1972) …..........................................................................................2, 4, 6, 11, 18, 50–52, 65
28 U.S.C. § 1291…………………………………………………………………...2
28 U.S.C. § 1331…………………………………………………………………2

28 U.S.C. § 1343……………………………………………………………….,...................2
28 U.S.C. § 1367(a)…………………………………………………………………….…2
28 U.S.C. § 2106…….……………………………………………………………4, 19, 62, 65
29 U.S.C. § 621 et seq. (ADEA)....……………………………………………….2, 5, 22, 40
42 U.S.C. § 1983……………………………………………………………………..2
42 U.S.C. § 2000e et seq.……………………………………………………………21–23, 29
42 U.S.C. § 12101 et seq. (ADA)...……………………………………………2, 5, 22, 40

## I. PRELIMINARY STATEMENT

This appeal seeks review of the District Court's July 21, 2025, final judgment dismissing Plaintiff-Appellant's civil rights action and the January 2, 2026, order denying post-judgment relief. The District Court's rulings are predicated on: (1) fundamental errors of law, including the application of an abrogated "materially adverse" standard in violation of *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024), and the dismissal of a Title IX claim based on a flawed "substantial control" standard regarding employer-provided email servers; (2) a departure from settled pleading standards under Rule 12(b)(6) through the systematic misconstruction of well-pleaded facts and the unauthorized use of extra-judicial internet research; (3) a disregard for procedural due process, evidenced by the dismissal of the action while critical discovery and Rule 36 Requests for Admissions remained frozen before the Magistrate Court; and (4) an abuse of discretion in denying post-judgment relief under Rules 59(e) and 60(b)(3), where the Court relied on inaccurate mathematical timelines, specifically miscalculating the access window for a voluminous, late-produced "data dump," to evade evaluation of the Defendants' material misrepresentations regarding investigation timelines. Given the Court's active hostility toward well-pleaded facts and its adoption of Defendants' unsubstantiated narratives, reversal and reassignment to a different judge are required to preserve the appearance of justice.

## II. JURISDICTIONAL STATEMENT

1. District Court Jurisdiction: The United States District Court for the Eastern District of New York had original subject-matter jurisdiction over Plaintiff-Appellant's federal constitutional and civil rights claims under 28 U.S.C. § 1331 and 28 U.S.C. § 1343. The operative First Amended Complaint ("FAC") alleged violations of the First Amendment via 42 U.S.C. § 1983, Title IX of the Education Amendments of 1972 (20 U.S.C. § 1681 et seq.), the Age Discrimination in Employment Act ("ADEA") (29 U.S.C. § 621 et seq.), and the Americans with Disabilities Act ("ADA") (42 U.S.C. § 12101 et seq.). The District Court possessed supplemental jurisdiction over accompanying state and city claims under 28 U.S.C. § 1367(a).
2. Appellate Court Jurisdiction: The United States Court of Appeals for the Second Circuit has subject-matter jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. This appeal is taken from a final judgment of dismissal terminating all claims in the action.
3. Timeliness of Appeal: The District Court entered its final Clerk's Judgment dismissing the action on July 21, 2025. Plaintiff filed a timely post-judgment motion to vacate, alter, or amend the judgment pursuant to Federal Rules of Civil Procedure 59(e) and 60(b) on August 15, 2025, which tolled the time

to appeal under Federal Rule of Appellate Procedure 4(a)(4). The District Court denied that motion on January 2, 2026. Plaintiff filed his Notice of Appeal on February 2, 2026, within the mandatory 30-day window prescribed by FRAP 4(a)(1)(A).

---

## III. STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1. Whether the District Court erred by applying an abrogated "materially adverse" standard rather than *Muldrow*'s "some harm" test for evaluating the claim regarding the standard of proof and test for evaluating Plaintiff's discrimination claims.

2. Whether the District Court violated Rule 12(b)(6) by refusing to credit well-pleaded factual allegations and by systematically misconstruing Appellant's arguments as mere "misunderstandings."

3. Whether the District Court erred de novo under Rule 12(b)(6) by applying a summary-judgment standard to causation, miscalculating summer tolling, and retroactively stripping Appellant of pro se special solicitude.

4. Whether the District Court erred in accepting Defendant-Appellees' illusory production as "possession" and abused its discretion by uncritically replicating Defendants-Appellees' unsubstantiated claims in error.

5. Whether the District Court erred in its July 18, 2025 Order by misusing judicial notice to import extrinsic material, re-write the causal timeline, and resolve disputed facts against Plaintiff, requiring conversion to a Rule 56 motion for summary judgment under Rule 12(d).

6. Whether the District Court abused its discretion by minimizing systemic retaliation and physical assault to workplace "quarrels" and by conducting impermissible off-record internet research.

7. Whether the District Court applied an incorrect legal standard to Plaintiff's Title IX deliberate indifference claim by holding that the Department of Education lacked "substantial control" over severe student-on-teacher sexual harassment over a period of years at the site it supervised and administered student-teacher policy, and occurring directly on its own employer-provided, @wcbryanths.org and @schools.nyc.gov email servers.

8. Whether the District Court abused its discretion in denying relief under Rules 59(e) and 60(b) by using an inaccurate mathematical calculation (claiming 19 days of access instead of 13) to find a lack of "due diligence," while ignoring Plaintiff being overseas without necessary equipment to process July 2, 2025 "data dump" and actively locked out of his digital credentials and access to data by the corporate Defendant on July 15, 2025.

9. Whether the District Court violated Procedural Due Process by dismissing the action with prejudice while material Requests for Admissions remained frozen before the Magistrate Court.

10. Whether the District Court abused its discretion and erred as a matter of law in denying Plaintiff's timely Rule 59(e) and Rule 60(b)(3) motion  usurping the role of the jury and adopting Defendants' material misrepresentations.

11. Whether the interests of justice and the objective appearance of partiality require that this case be reassigned to a different District Judge upon remand pursuant to 28 U.S.C. § 2106 and the *United States v. Robin* standard.

## IV. STATEMENT OF THE CASE

Plaintiff-Appellant Michael Eisenberg appeals from a final judgment of the U.S. District Court for the Eastern District of New York (Gonzalez, J.), entered on July 21, 2025, which granted Defendants' Motion to Dismiss the First Amended Complaint with prejudice under Federal Rule of Civil Procedure 12(b)(6) (A169–203), and denied Plaintiff's timely post-judgment motion to vacate and to alter or amend the judgment under Rules 59(e) and 60(b) on January 2, 2026 (A261–72).

Plaintiff, a tenured public school music teacher and a newly admitted attorney (July 16, 2024) proceeding pro se, initiated this civil rights action (March 4, 2024) to seek redress for a multi-year, coordinated campaign of administrative retaliation, salary degradation, targeted classroom surveillance, and fabricated disciplinary investigations launched by school administrators after Plaintiff exposed administrative discriminatory abuses of employment law and contract and systemic grade-fixing and graduation data fraud, first reported internally to New York City Department of Education ("DOE") upper supervisorial management, the United Federation of Teachers ("UFT"), and ultimately to the New York Post ("Post").

Plaintiff further alleged that Defendants discriminated against him based on his age and disability, identifying per-session pay disparities between Plaintiff and

younger, less-tenured comparators, as well as the denial of requested disability accommodations. Additionally, Plaintiff alleged Defendants acted with deliberate indifference under Title IX by failing to address reported student-on-teacher sexual harassment occurring on the DOE's proprietary email servers and on-site at the School from 2021 through 2025. The District Court dismissed all federal claims with prejudice and declined to exercise supplemental jurisdiction over the remaining state and city law claims. This appeal followed.

---

## V. STATEMENT OF FACTS

### A. Day-One Age Discrimination and Per-Session Disparities

Appellant Michael J. Eisenberg has been employed as a tenured music teacher by Defendant DOE since September 2011, and at DOE William Cullen Bryant High School ("School") since September 2017, in which DOE site, he possessed greater seniority, tenure, qualifications, and advanced degrees than his younger counterparts. Long before Appellant engaged in any public whistleblowing speech, school administrators at the School established a systemic, age-based discriminatory pay structure.

Beginning in his very first month of employment at the school, administrators routinely diverted per-session (i.e. DOE overtime compensatory denomination)

earning opportunities away from Appellant and toward significantly younger, less-tenured music teacher comparators (Comparators Weisman, Lanzet, and Somer, all under the age of 40). By 2023, this systemic disparity escalated to an absolute economic lockout: while Comparator Weisman was allocated $22,465 in per-session income, Appellant was restricted to just $1,332, despite holding superior seniority. Appellant first received full notice of this disparity in Spring 2024.

**B. Denial of Requested Disability Accommodations**

Appellant suffers from a chronic, documented migraine condition that substantially limits major life activities, including walking, talking, seeing, and working. (A22 ¶8, A24 ¶19, A27 ¶36, A35 ¶82) Beginning in 2020, Appellant formally notified school administrators, including Defendants AP Alissa Crea Mason and Principal Carolyn St. Aubain, that his condition was exacerbated by his workplace environment and specific administrative interactions. Appellant requested accommodations, specifically, a virtual assignment during COVID-19 outbreaks; regular testing to protect against heightened vulnerability owing to disability; and provision of transparent comprehensive sick-leave reporting and alternate accommodation (A33–36, ¶¶75, 78, 81–85, 89). However, the school failed to engage in the interactive process. Instead, the School Attendance Secretary routinely rejected Appellant's medical documentation, misreported medically

necessary absences as unauthorized, and docked Appellant's salary. Appellant alleged that these administrative actions were taken to penalize him for his medical condition, noting that non-disabled staff members with similar attendance patterns were not subject to identical disciplinary measures.

**C. Protected Whistleblowing Speech and Institutional Awareness**

Beginning in November 2017, Appellant regularly voiced public concerns to the School, DOE upper administration, the UFT,  and publicly, during UFT meetings, regarding an alleged illegal administrative policy at the School that pressured educators to "fix grades" and pass students who had plagiarized work or failed to attend classes, to fraudulently boost institutional metrics; and of alleged age-discriminatory and additional abusive employment practices. This led to a chain of retaliatory actions by Defendants, including increased disparity of per-session and professional opportunity allocations, poor performance reviews, and multiple sham investigations.

This whistleblowing activity escalated significantly on June 15, 2022, when Appellant provided extensive internal documentation of administrative grade-fixing to the *Post* investigative reporter Susan Edelman. On June 18, 2022, the *Post* published a highly publicized exposé detailing the school's systemic evasion

of grading ethics under Defendant Principal Namita Dwarka. Following the public exposure, the DOE moved Dwarka out of her role. Institutional awareness was explicitly established on the face of the record when Dwarka affirmatively convened a general faculty meeting specifically to address and denounce the published Post article.

**D. Active Temporal Retaliation and Administrative Exile**

Because the *Post* articles were published at the absolute close of the active 2021–2022 school year, the individual Defendants lacked an immediate operational window to act during the summer academic recess. Notwithstanding, during the summer of 2022, Defendants revived stale-dated, closed, and unsubstantiated investigations of sexual misconduct, initially lodged by Defendants and their agents against Plaintiff in early 2021. However, upon the immediate reopening of school for the 2022–2023 term, Defendants launched a rapid series of adverse employment actions:

a. On September 14, the fifth day of classes for the 2022–2023 term, Defendants opened an anonymous online allegation of sexual misconduct (corresponding investigation begun September 15) against Plaintiff involving a newly-admitted minor from his class,

who had been chronically absent and late during her first four days of class; the allegation, which claimed Plaintiff "seduced with his words"—a phrase the child could not later define—was plainly fabricated by Defendants and did not originate with the student.

b. September 16–23, 2022: Appellant engaged in protected union activity by running for a UFT campus leadership position.

c. September 30, 2022: Defendants retroactively amended per-session criteria to automatically disqualify Appellant from supplemental earnings.

d. October 4, 2022: Mason placed Appellant on an un-contractual "Teacher Improvement Plan" ("TIP").

e. October 6, 2022: Only weeks into the new term, St. Aubain's agent and Defendant AP Henri Huezo entered Appellant's classroom mid-instruction, refused his request for union representation, and exiled him under the guise of an unnotified investigation. Appellant was forced to pack his personal belongings in front of his students and was escorted out of the building into administrative exile.

**E. Title IX Deliberate Indifference to Server-Based Harassment**

On March 6, 2023, while placed in administrative exile, Appellant received a barrage of 39 separate messages containing severe hate speech and explicit sexual harassment sent by former students (whose previous harassment Appellant had reported to the School in January 2022 with zero intervention and rather, egregious administrative retaliation), texts sent from anonymous numbers directly to his official, employer-provided school email account (@wcbryanths.org). Having first bored these messages March 28, 2023, on March 31, 2023, Appellant formally reported this digital harassment to St. Aubain and presented the evidence to Defendant AP Moises Morales. Appellant subsequently emailed St. Aubain and copied a DOE superintendent.

Neither St. Aubain, Morales, nor the superintendent replied or took action. Despite the fact that the platform is completely hosted, monitored, and administratively controlled by the DOE, school officials completely declined to respond, investigate the digital origin of the messages, or take any protective measures such as simply flagging and preserving germane video and, forcing Appellant back into shared classroom environments with the student harassers.

**F. Documented External Operational Impediments and Post-Judgment Digital Lockout**

Two weeks prior to the District Court's initial dismissal, Defendants dropped an incomplete, un-indexed, and heavily repetitive "document dump" on July 2, 2025, due which was mandated by the court to be produced two months prior. This production contained massive ZIP files filled with hundreds of copies of the school logo to actively obscure material evidence regarding hidden, backdated investigations.

While attempting to parse this archive, Appellant was located in Taiwan, fulfilling mandatory daily responsibilities on a Fulbright-Hays project, 10 to 12 hours a day, without access to computing hardware capable of extracting multi-gigabyte files, while simultaneously navigating a severe regional typhoon July 6-7, 2025, impacting any electronic retrieval. On July 15, 2025, just 13 days after dropping the files, the DOE unilaterally deactivated all of Appellant's digital network access codes without prior notice. On July 18, 2025, the District Court issued its dismissal order, and subsequently denied Appellant's motion to vacate on January 2, 2026, branding Appellant's cured 35-page evidentiary clarification as uncredited, "revisionist readings" (6).

**G. Withholding of FOIL Requests until after Dismissal** about the specific investigation, alleged by Defendants to be the motivating factor for the October 6, 2022 reassignment—the DOE failed to provide timely, comprehensive responses, if at all. Defendants consistently ignored mandatory statutory response deadlines; when partial disclosures were eventually produced, the DOE routinely omitted material documentation, including the April 2022 investigation file and other pertinent records, only first noticing Appellant in a delayed FOIL response of its closure four business days after the court's post-judgment decision in January 2026.

This institutional lack of transparency suppressed evidence essential to verifying the legitimacy of the disciplinary investigations and salary adjustments to which Appellant was subject, effectively insulating the Defendants' administrative actions from contractual or factual scrutiny. Specifically, critical information establishing the falsity of Defendants' cognizant false assertion that the reassignment in October 6, 2022 dated to a known closed investigation was withheld by Defendants till four business days after the final ruling on the post-dismissal Motion to Vacate, although the FOIL request had been submitted over a year and a half prior. This permitted Defendants to maintain this false position, despite full knowledge of its falsity, thus preventing Appellant from properly litigating his case. Plaintiff

contends that this continuous chain of overlapping investigations, spanning from January 2018 through Appellant's current ongoing reassignment of September 2, 2025, by Defendants, manifests a pervasive policy and practice of systemic retaliation and discriminatory harassment. This has been further exacerbated by the routine obfuscatory denial of contractually required notice to Appellant. Indeed, in the new current reassignment, enforced against Appellant by Defendants on September 2, 2025, Appellant has not as yet to date been informed of any specific allegations or charges.

---

## VI. STATEMENT OF PROCEDURAL PRESERVATION

1. **Procedural and Due Process Rights**: The District Court's dismissal while critical Rule 36 Requests for Admissions remained frozen before the Magistrate Court created an impermissible "procedural trap," depriving Plaintiff of the opportunity to satisfy demands for specificity. The court further erred by failing to evaluate proposed amendments or allow attachment of a proposed Second Amended Complaint under the liberal standard of FRCP 15 (comp. A227–48, A255–60). Finally, the court placed Plaintiff in an unnoticed Hobson's choice position by finding that opposition papers would be substituted retroactively for the opportunity to amend to cure any perceived defects. The court's unexplained finding of futility to

cure, without addressing new evidence (esp. A249–50) alleged to be only a selected portion of new evidence recently noticed to Appellant on July 2, 2025, proposed amendments, and allegations of Defendants' bad-faith obstruction and misrepresentation; and denial of the attachment of a proposed amended complaint or any additional evidence exhibits, pursuant to an unyielding individual practice protocol, further stringently prejudiced Plaintiff. *Berger v. United States*, 87 F.3d 60, 65 (2d Cir. 1996)(premature resolution of factual sufficiency without discovery is error); *Sutera v. Schering Corp.*, 73 F.3d 13, 18 (2d Cir. 1995)(dismissal prior to discovery completion premature); *Trebor Sportswear, Inc. v. The Limited, Inc.*, 865 F.2d 506, 511 (2d Cir. 1989); *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190–91 (2d Cir. 2011); *Faber v. Metro Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011); *Cresci v. Mohawk Valley Cmty. Coll.*, 693 F. App'x 21, 24–25 (2d Cir. 2017)(Summary Order)(denying leave to amend with Rule 12(b)(6) dismissal for non-amendment prior to deficiency ruling reversible error); *Oliver Schools, Inc. v. Foley*, 930 F.2d 248, 252–53 (2d Cir. 1990); *Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2011); *Pangburn v. Culbertson*, 200 F.3d 65, 70 (2d Cir. 1999)(denying leave to amend on futility grounds is abuse of discretion unless record conclusively demonstrates proposed amendments cannot cure the legal

defects as a matter of law); *Ronzani v. Sanofi S.A.*, 899 F.2d 195, 198 (2d Cir. 1990)(informal amendment request in opposition brief sufficient to preclude dismissal with prejudice; District Court abuses discretion by dismissing complaint with prejudice without granting leave to amend where plaintiff indicated willingness to cure pleading deficiencies in opposition papers).

2. **Rule 60(b)(3) Fraud and Misrepresentation**: Relief is mandated due to Defendants' "fraud, misrepresentation, or misconduct" in backdating a September 15, 2022 investigation to April 6, 2022, to artificially sever First Amendment causation. *Catskill Dev., LLC v. Park Place Ent. Corp.*, 286 F. Supp. 2d 309, 314 (S.D.N.Y. 2003); *Warren v. Gavin*, 219 F.3d 111, 114 (2d Cir. 2000).

3. **Newly Discovered ESI and Due Diligence**: The July 2, 2025 "data dump" contained material evidence of retaliatory investigations previously withheld. Plaintiff maintained due diligence despite a 13-day review window (miscalculated as 19 days by the court) and the DOE's July 15 digital lockout. *United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 391 (2d Cir. 2001); *In re Tremont Sec. Lawsuit*, 2013 WL 5179074, at *5 (S.D.N.Y. Sept. 16, 2013); *State St. Bank & Tr. Co. v. Inversiones Errázuriz Limitada*, 374 F.3d 158, 176 (2d Cir. 2004).

4. **Spoliation of Evidence**: Defendants engaged in the active suppression of evidence by deploying un-indexed ZIP files and unilaterally deactivating Plaintiff's network access to prevent forensic review of administrative timelines. *Klipsch Grp., Inc. v. eBay Inc.*, 829 F.3d 254, 261–62 (2d Cir. 2016); *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999); *SEC v. Collins & Aikman Corp.*, 256 F.R.D. 403, 414 (S.D.N.Y. 2009).

---

## VII. SUMMARY OF ARGUMENT

The District Court’s judgments represent a fundamental departure from the principles governing federal pleading standards and post-judgment equity.

First, the court committed a foundational error of law by applying an abrogated “materially adverse” standard for employment discrimination (A130–32, A142, A208). In failing to apply the “some harm” test articulated by the Supreme Court in *Muldrow*, the court artificially narrowed the scope of actionable harm, effectively insulating the Defendants from liability for claims that meet the modern threshold for relief. This error was compounded by the court’s violation of Rule 12(b)(6); the court failed to accept well-pleaded factual allegations as true, improperly substituted its own factual narrative for the complaint's allegations, and

retroactively stripped Appellant of pro se special solicitude by applying corporate attorney standards to pleadings filed prior to his admission to the bar.

Second, the court engaged in improper, de novo fact-finding. By conducting unauthorized, off-record internet research to contradict well-pleaded facts and by minimizing a systemic, years-long campaign of data manipulation and physical safety hazards as personal “quarrels,” the court bypassed the mandatory presumption of truth required at the pleading stage. Furthermore, the court applied a legally erroneous standard to the Title IX claim. By ruling that anonymous digital routing insulates a school district from liability, the court ignored the fact that the severe harassment occurred directly on the DOE’s proprietary, employer-mandated email servers and campus, i.e., an environment under the absolute technical and regulatory control of the institution.

Third, the court abused its discretion in its post-judgment order by deploying a demonstrably inaccurate mathematical timeline, overstating Appellant’s discovery access window, to evade evaluation of the Defendants’ material misrepresentations regarding investigation timelines. This error was exacerbated by the court’s decision to dismiss the action with prejudice while material Requests for Admissions remained frozen and unresolved before the Magistrate Court,

effectively denying Appellant the discovery necessary to respond to the dismissal motion. (For overview of Appellant allegations of discovery dilatory handling, intentional spoliation of critical ESI, tactical overproduction, boilerplate objections, and bad-faith concealment, see A113–122, A159–168.)

Finally, because the record reflects pervasive procedural asymmetry and a structural departure from neutral toward well-pleaded facts, the integrity of the forum has been compromised. To preserve the public appearance of justice, this matter must be reversed and reassigned to a different district judge upon remand pursuant to the *United States v. Robin* standard.

---

## VIII. LEGAL ARGUMENT

### POINT I: THE DISTRICT COURT ERRED BY APPLYING AN ABROGATED "MATERIALLY ADVERSE" STANDARD RATHER THAN MULDROW'S "SOME HARM" TEST, REQUIRING A REMAND TO EVALUATE PLAINTIFF'S CLAIMS UNDER THE CORRECT LEGAL FRAMEWORK

The District Court committed reversible error by applying an outdated, heightened legal threshold to determine whether Defendants' conduct constituted actionable employment harm. In dismissing Plaintiff's federal discrimination and retaliation claims, the District Court relied entirely on pre-*Muldrow* Second Circuit precedent,

namely *Clarke-Green v. N.Y.C. Dep't of Educ*., 2019 WL 13149583 (E.D.N.Y. Mar. 20, 2019) and *Zoulas v. N.Y.C. Dep't of Educ.*, 400 F. Supp. 3d 25 (S.D.N.Y. 2019) (A188 ll. 17–21), holding that an adverse action strictly requires proof of a "materially adverse change in the terms and conditions of employment." Based on this superseded standard, the District Court artificially narrowed its review to only three discrete actions (A189 ll. 14–19), while summarily excluding an array of severe employer conduct, including bad-faith disciplinary letters (A27 ¶40, A32 ¶64, A36 ¶89, A41 ¶112), public reprimands (A26 ¶33, A49 ¶158, A55 ¶189), bad-faith observation ratings (A26 ¶32, A31 ¶60, A32 ¶62, A37 ¶¶90, 92, A40 ¶108, A42 ¶121, A56 ¶198, A57 ¶¶202, 205), stripping of departmental curriculum/materials (A38 ¶96, A53 ¶182), and the placement of an unverified, job-preclusive "problem code" on Plaintiff's personnel file (A47 ¶152, A49 ¶160, A51 ¶170, A69 ¶268; A247–48).

This heightened standard was explicitly abrogated by the Supreme Court in *Muldrow*. In *Muldrow*, the Supreme Court clarified that while a plaintiff asserting discrimination "must show some harm respecting an identifiable term or condition of employment," she need not show that "the harm incurred was 'significant'. . . [o]r serious, or substantial, or any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar," *Muldrow* at 354–55.

The Court underscored the broad reach of its ruling: "[T]his decision changes the legal standard used in any circuit that has previously required 'significant,' 'material,' or 'serious' injury. It lowers the bar Title VII plaintiffs must meet," id. at 356 n.2. The *Muldrow* ruling explicitly abrogates a broad corpus of erstwhile restrictive circuit precedent requiring Title VII plaintiffs to prove significant,' 'material,' or 'serious' injury including those named in *Muldrow* n.2, such as: *Caraballo-Caraballo v. Correctional Admin*., 892 F.3d 53, 61 (1st Cir. 2018); *Williams v. R. H. Donnelley, Corp*., 368 F.3d 123, 128 (2d Cir. 2004) ("materially significant disadvantage").

Furthermore, the District Court erred in limiting its analysis under the assumption that *Muldrow* applies only to job transfers (A188–90). Courts interpreting *Muldrow* across federal circuits have repeatedly recognized that its holding stems from generally applicable statutory language and applies broadly to all terms and conditions of employment, including non-transfer contexts. See *Mitchell v. Planned Parenthood of Greater N.Y., Inc*., 2024 WL 3849192, at *9 (S.D.N.Y. Aug. 16, 2024) ("Although *Muldrow* directly concerned a transfer, its reasoning relies on the language of Title VII's anti-discrimination provision rather than anything special about transfers."). Because *Muldrow* lowered the threshold of what constitutes actionable discrimination, it also broadened what an employee

may reasonably believe to be discriminatory for purposes of evaluating whether a complaint constitutes protected activity under anti-retaliation provisions (A227–28 #2). Cf. *Davis v. Orange Cnty*., 2024 WL 350772, at *4 (11th Cir. July 23, 2024); *Fine v. Ryan Int'l Airlines*, 305 F.3d 746, 752 (7th Cir. 2002) (holding that retaliation is improper unless an underlying claim is "completely groundless," setting a "not . . . high bar").

Because the District Court improperly imposed an extra-textual evidentiary burden on Plaintiff by applying an obsolete pre-*Muldrow* "materially adverse" standard (A188–90), this Court should reverse and remand with instructions to apply the correct legal standards in the first instance. Comp. *Peifer v. Bd. of Prob. & Parole*, 106 F.4th 270, 277 (3rd Cir. 2024)(remanding to district court to evaluate claims under *Muldrow*'s "some harm" standard); *Peccia v. Cal. Dep't of Corr. & Rehab*., 2024 WL 1985817, at *1 (9th Cir. May 1, 2024).

**SUB-ARGUMENT: THE MULDROW "SOME HARM" STANDARD APPLIES EQUALLY TO ADEA AND ADA DISCRIMINATION CLAIMS**

The District Court improperly restricted its adverse action analysis on Plaintiff's ADEA and ADA claims by failing to recognize that *Muldrow*''s threshold may apply to all federal anti-discrimination statutes sharing identical statutory language

(A188–90, A197–99). While *Muldrow* arose in the context of Title VII, the Supreme Court's reasoning was rooted in the core statutory phrase prohibiting discrimination regarding the "terms, conditions, or privileges of employment" and thus in the instant case offers the Court a first-impression consideration of such application of the *Muldrow* holding.

## POINT II: THE DISTRICT COURT ERRED ERRED DE NOVO AND COMMITTED REVERSIBLE ERROR UNDER RULE 12(b)(6) BY REFUSING TO CREDIT WELL-PLEADED FACTUAL ALLEGATIONS, SYSTEMATICALLY MISCONSTRUING APPELLANT'S ARGUMENTS, AND FABRICATING A FALSE CAUSAL TIMELINE NEVER PROPOSED

The District Court breached the foundational mandate of Rule 12(b)(6) by failing to "accept all factual allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor" (*Loreley* at 171). Instead of evaluating the facial plausibility of the FAC, the District Court engaged in premature, threshold fact-finding, improperly adopted Defendants' unsworn representations over Plaintiff's well-pleaded facts, misquoted key counts, and minimized severe civil rights violations into mere workplace "quarrels."

### A. The District Court Fabricated an Illogical "Backward Causality" Timeline by Conflating Unrelated, Unnoticed Investigations

**1. The District Court's Misrepresentation**: In its July 18, 2025 Order, the District Court held that Plaintiff failed to establish a causal connection between his First Amendment whistleblowing and his administrative exile, reasoning that the investigation into Plaintiff began *before* his media contact. Specifically, the Court asserted:

"Making a causal inference even less plausible, the investigation of Plaintiff for sexual misconduct with a minor began over two months prior to his communications with the reporter. Plaintiff acknowledges that... he received an SCI report of the investigation, dated April 6, 2022." (A178 n.10).

The District Court reiterated this finding in its January 2, 2026 Order, dismissing Plaintiff's timeline clarification as "unfounded and baseless" "revisionist readings" (A268 n.8, A270).

**2. The Operative Record in the FAC & MTV Defects: The District Court's fin**ding is a demonstrable distortion of the record:

- June 13–18, 2022: Whistleblowing (A42 ¶¶122–23; A228–29 #3).
- September 14–15, 2022: Exactly five class days into the Fall 2022 semester following the NY Post article, Defendants (specifically AP Morales) opened an anonymous online complaint against Plaintiff (A233–34 #12; A249 #2).

- October 6, 2022: Plaintiff was removed from his classroom mid-instruction, stripped of keys, and escorted out of the building into administrative exile, with Principal St. Aubain declaring with open animus, "I know what this is about" (A44 ¶132; A234 #12).
- The April 6, 2022 Investigation: The separate April 6, 2022 file was kept secret by Defendants; Plaintiff was given zero notice of it until December 6, 2024 during Rule 26(a)(1) initial disclosures (A59 ¶217; A235 #17).

**3. Reversible Error under Second Circuit Precedent**: Plaintiff never asserted that an April 2022 event caused an October 2022 removal—a phantom theory of "backward causality" invented by the District Court to insulate Defendants. The active, operational retaliation was triggered on September 15, 2022 (five days into the term) and executed on October 6, 2022. By taking an unnoticed April 2022 file known to Defendants to have been closed prior to Fall 2022 and the October 6, 2022 reassignment, nonetheless treating it as the catalyst for an October 2022 exile, the District Court resolved a fiercely contested factual dispute in favor of the moving party. At the Rule 12(b)(6) stage, resolving timeline disputes against the

non-movant violates *Loreley*, and usurps the exclusive province of the jury under *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986).

**B. The District Court Misquoted Paragraph 269 of the FAC to Discredit Plaintiff's Veracity**

1. The District Court's Misrepresentation: In its January 2, 2026 Order, the District Court claimed Plaintiff engaged in "revisionist readings" of his own complaint by asserting that "all" investigations against him concluded as unsubstantiated:

"Not so... Plaintiff did not allege that sexual misconduct allegations filed by students and colleagues against him were found unsubstantiated, as he now claims. AC 269 merely alleged that an investigation into the 'Schettini' incident found the related allegations... to be unsubstantiated." (A268–69 n.8).

**2. The Operative Record in the FAC**: The District Court isolated Paragraph 269 to discredit Plaintiff. Paragraph 269 was pleaded under Plaintiff's Seventh Claim for Relief (Libel per se against Defendant DOE for attaching a problem code) (A69 ¶¶268–69). Across the broader FAC,

Plaintiff explicitly pled that “every single formal investigation” where findings were rendered concluded as “unsubstantiated”:

- May 31, 2018: SCI Investigation 2018/0477 closed with no further action (A30 ¶53).
- June 12, 2019: Case 19-06521X returned with all investigative findings unsubstantiated (A32 ¶64).
- May 26, 2023: SCI Case #2022-6822 (the reassignment trigger) concluded with all allegations determined unsubstantiated (A47–48 ¶¶152, 157).
- March 19, 2024: OEO “Schettini” complaint found unsubstantiated and withdrawn by Dwarka (A57 ¶207).

**3. Reversible Error under Second Circuit Precedent**: Plucking a single sentence out of a state-law libel claim to brand Plaintiff’s federal pleading as “revisionist” violates the rule that a complaint must be read as an integrated whole (*Tellabs, Inc. v. Major Issues & Rights, Ltd*., 551 U.S. 308, 322 (2007); *Faber v. Metro. Life Ins. Co*., 648 F.3d 98, 104 (2d Cir. 2011)). The District Court’s refusal to credit plain facts pleaded throughout FAC (A30 ¶53, A32 ¶64, A47–48 ¶¶152, 157, and A57 ¶207) constitutes clear error.

**C. The District Court Impermissibly Minimized Severe Retaliation, Physical Assault, and Economic Lockout into Mere “Workplace Quarrels”**

1. **The District Court’s Mischaracterization**: In its July 18, 2025 Order, the District Court summarized Plaintiff’s 56-page complaint of multi-year civil rights violations as follows:

“Plaintiff’s Amended Complaint recounts numerous disagreements, misunderstandings, and quarrels he has had with School administrators and students over the course of seven years... and other incidents to which School administrators allegedly did not react, like when students recorded Plaintiff, stared into his classroom, or caused him to fall by pulling a piano bench from under him.” (A171).

**2. The Operative Record in the FAC**: Plaintiff did not allege petty personal squabbles. The FAC detailed concrete, actionable adverse employment actions and physical hazards:

- Physical Assault & Injury: On December 8, 2023, a student caused fall that aggravated recent back surgery and required line-of-duty leave (A56 ¶200).

- Absolute Economic Lockout: Defendants systematically diverted per-session (overtime) pay away from Plaintiff to younger, non-disabled comparators (Weisman, Lanzet, Somer). In 2023, Comparator Weisman was awarded $22,465 while Plaintiff was restricted to $1,332. In 2024, Plaintiff received $263 while Comparators received up to $22,953. (A30 ¶59, A45 ¶¶135, 140).
- Demotion & Out-of-License Punitive Assignments: Plaintiff was stripped of his music classes, demoted to daily random substitute status upon returning from reassignment, and forced to teach Spanish and French out-of-license without remuneration (A25 ¶26, A28 ¶45, A34 ¶76, A47 ¶153).

**3. Reversible Error under Second Circuit Precedent**: Dismissing a physical assault inside an active classroom and a 95% salary deprivation in supplemental earnings as minor “workplace quarrels” violates *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) and *Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015). Furthermore, under *Muldrow*, 601 U.S. 346, 354–55 (2024), Title VII and related anti-discrimination statutes require only "some harm" respecting a term or condition of employment—not “significant,” “serious,” or “monumental” injury. The District Court’s

reliance on pre-*Muldrow* Circuit law (*Clarke-Green*; *Zoulas*, 400 F. Supp. 3d 25) to filter out these adverse actions is reversible legal error (A188–89).

**D. The District Court Violatively Employed Extra-Judicial Web Searching to Overwrite Well-Pleaded Whistleblower Identification**

**1. The District Court's Improper Research**: To defeat Plaintiff's First Amendment retaliation claim at the pleading stage, the District Court conducted off-record internet research on the live *Post* website:

"The Court takes judicial notice that the article Plaintiff relies on, as it exists on the New York Post website, contains none of the so-called identifying information that Plaintiff alleges." (A176 n.8).

>

**2. The Operative Record in the FAC & MTV Defects**:

- Plaintiff explicitly pleaded that three distinct versions of the article were published on June 18, 2022 (A42–43 ¶123; A229–30 #5).
- The initial published version identified the whistleblower as a "music teacher" with five years' tenure at the School who filed complaints regarding plagiarized work. Plaintiff was the *only* music teacher out of 150 faculty members fitting this exact profile.

**3. Reversible Error under Second Circuit Precedent**: Under Federal Rule of Evidence 201, a court may take judicial notice of online press coverage *only* to establish the fact that statements were made public—it is strictly prohibited from using live web searches to resolve disputed underlying facts or overwrite well-pleaded allegations regarding archived or scrubbed editions (*Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008); *New Jersey Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*, 709 F.3d 109, 127 n.11 (2d Cir. 2013)). By using a live 2025 URL to negate Plaintiff's well-pleaded facts regarding the June 18, 2022 archived edition, the District Court committed fatal procedural error under Rule 12(b)(6).

## E. The District Court Erred De Novo by Constructing Straw-Man Fallacies, Narrowly Confining Whistleblowing to Media Outlets, and Conflating Broad Union Activities into an Isolated Meeting Statement

**1. The District Court's Misconstruction and Straw-Man Framing**: In both its July 18, 2025 Order (A174–78) and its January 2, 2026 Post-Dismissal Order (A266–68), the District Court erected a straw-man narrative by artificially restricting Plaintiff's protected First Amendment activity to two isolated buckets: (1) contacting a New York Post reporter in June 2022,

and (2) making vague verbal comments at a union meeting. The Court then deployed this narrow framing to declare Plaintiff's claims speculative and insufficient, stating:

"The Amended Complaint does not say what statements Plaintiff made at these union meetings, when he made them, or whether any Defendant was aware of Plaintiff's statements... Here, the Amended Complaint merely claims in a speculative and conclusory fashion that the police were called on January 18, 2018, 'in retaliation for union activity and refusal to fix grades[.]' AC ¶42. This is insufficient to plead a causal connection between Plaintiff's speech and the allegedly false accusation against him, especially when paired with Plaintiff's vague allegations of union activities…" (A175–78).

**2. The Plain Statutory and Factual Text of the Operative FAC**: The District Court's reasoning directly contradicts the express, plain language pled within the four corners of the FAC, as well as Plaintiff's record clarifications (A227–28 #1–2; A253–58):

- **Internal Upper-Management Whistleblowing**: The FAC explicitly pled that long before contacting any external media outlet, Plaintiff

engaged in extensive internal whistleblowing by directly reporting illegal administrative practices—including grade-fixing, forcing passes for non-attending students, and contractual violations—to School leadership and DOE Upper Management. On January 5, 2018, Plaintiff formally emailed District Superintendent Elaine Lindsey to report AP Troianos's falsification of official public scheduling records and contractual meeting violations (A27 ¶39). On January 9, 2018, a mere four days later, Defendants retaliated by summoning Plaintiff to consecutive disciplinary conferences, falsely accusing him of "deliration [sic] of duties" for emailing Superintendent Lindsey, which culminated in a formal letter to his file on January 22, 2018 (A27 ¶40).

- **Comprehensive Union Activity Beyond Meeting Speech**: The District Court impermissibly reduced Plaintiff's "union activity" to a single uncredited meeting remark, completely ignoring the broad array of protected union activities explicitly pleaded in the FAC: A170–71 #5).

    1. **Filing Contractual & APPR Grievances**: Filing formal UFT APPR complaints and Step 1/Step 2 grievances on December 7, 2017 (A26 ¶35), January 17, 2018 (A27

¶41), June 18, 2019 (A32 ¶65), March 16, 2022 (A41 ¶114), and May 16, 2022 (A42 ¶119).

2. **Campaigning for Union Leadership**: Running for the UFT School Leadership Team (SLT) representative position from September 16–23, 2022, which involved open daily campaigning in the main office where Individual Defendants collected mail, public ballot distribution via DOE email, and direct notice from UFT Representative Lignou (A43 ¶128; A168–69 #2).

3. **Collective Union Advocacy**: Formally protesting the non-allocation of Social Emotional Learning (SEL) time and instrument resources on behalf of all Bryant teachers during a December 17, 2021 conference with AP Manolios and AP Crea Mason (A39 ¶103; A168–69 #2).

4. **Asserting Rights to Representation**: Explicitly asserting the right to UFT representation during hostile disciplinary encounters and advising fellow harassed teachers to do the same (A36 ¶88, A39 ¶107, A44 ¶132; A168–69 #2).

- **Immediate First Chain of Adverse Actions**: The FAC pled a clear, temporally tight chain of retaliatory adverse actions following Plaintiff's refusal to fix report card grades for non-students on November 9, 2017 (A25–26 ¶¶27–28) and his January 5, 2018 whistleblower email to Superintendent Lindsey (A27 ¶39). These retaliatory acts included: immediate bad-faith observation ratings (A26 ¶32, A28 ¶44), shouting reprimands in public spaces (A26 ¶33), disciplinary notices (A27 ¶38), fraudulent "deliration" charges and letters to file (A27 ¶40), calling the police on January 18, 2018 regarding unsubstantiated allegations (A27 ¶42), and stripping Plaintiff of his only advanced in-license Mixed Choir class to reassign it to younger Comparator Weisman (A28 ¶45).

**3. Reversible Error under Second Circuit Precedent**: The District Court's decision to translate Plaintiff's multifaceted union grievances, campaign candidacy, administrative whistleblowing, and collective advocacy into an isolated, "vague" union meeting comment constitutes reversible legal error:

- **Breach of Rule 12(b)(6) Standard**: At the motion to dismiss stage, a court is strictly required to draw all reasonable inferences in favor of the plaintiff and evaluate the complaint as an integrated whole (Cf. *Loreley*; *Faber)*. Transforming a comprehensive, 7-year record of

UFT grievances, candidacy, and upper-management whistleblowing into a single straw-man item violates this core mandate.

- **Protected Speech Encompasses Internal Whistleblowing and Union Representation**: Reporting public corruption, grade fraud, and contractual violations to supervisors and district superintendents constitutes protected speech on a matter of public concern under the First Amendment (*Lane v. Franks*, 573 U.S. 228, 235–36 (2014); *Bernheim v. Litt*, 79F.3d 318, 325 (2d Cir. 1996) (holding that reporting a principal's misrepresentation of student performance data is protected speech of public concern)). Furthermore, filing labor grievances and running for union office are protected First Amendment activities (*Montero v. City of Yonkers*, 890 F.3d 386, 395–99 (2d Cir. 2018); *Clue v. Johnson*, 179 F.3d 57, 60–61 (2d Cir. 1999)).
- **Temporal Proximity Establishes Causation**: The 4-day gap between Plaintiff's January 5, 2018 whistleblower email to Superintendent Lindsey and the January 9, 2018 disciplinary summons (leading to the January 18 police call and January 30 class removal) easily satisfies the temporal proximity threshold required to infer retaliatory causation at the pleading stage (*Cioffi v. Averill Park Cent. Sch. Dist.*

*Bd. of Educ.*, 444 F.3d 158, 168 (2d Cir. 2006); *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015)).

By creating a straw-man argument that artificially restricted whistleblowing to media contact and reduced union activity to a single meeting statement, the District Court ignored the plain language of A25–28 ¶¶27–45, misapplied Second Circuit causation standards, and committed clear error requiring de novo reversal

**SUB-ARGUMENT: REFUSING TO VALIDATE FRAUDULENT ACADEMIC RECORDS AND EXPOSING SYSTEMIC DATA MANIPULATION ARE CONSTITUTIONALLY PROTECTED SPEECH UNDER JACKLER V. BYRNE AND LANE V. FRANKS**

**1. Refusal to Execute Unethical Directives is Protected Under Jackler v. Byrne**

The District Court fundamentally erred by categorizing Appellant's refusal to participate in administrative grade-fixing as un-protected routine job duties. Under controlling Second Circuit precedent, an employee's refusal to accede to administrative demands to commit dishonest or fraudulent acts constitutes protected citizen speech under the First Amendment. *Jackler v. Byrne*, 658 F.3d 225, 241 (2d Cir. 2011). In *Jackler*, the Second Circuit explicitly held that while *Garcetti v. Ceballos*, 547 U.S. 410 (2006), places routine official duty speech outside First Amendment protection, Garcetti does not permit public employers to coerce employees into fabricating official records or making affirmative misrepresentations. *Jackler*, at 240–41. Just as a police officer cannot be penalized

for refusing to retract a truthful report or submit a falsified statement, an educator and officer of the court cannot be subjected to administrative exile for refusing to validate altered, fraudulent academic records or issue passing marks to non-attending students. Because a private citizen has the right to refuse to join in a government misrepresentation, Appellant's refusal to endorse systemic grade fraud possesses a clear civilian analogue and remains protected by the First Amendment. Id. at 241; see also *Weintraub v. Bd. of Educ*., 593 F.3d 196, 203–04 (2d Cir. 2010).

**2. Heightened Protection for Exposing Systemic Corruption under Lane v. Franks**

Furthermore, the District Court erred by restricting Appellant's speech to internal workplace grievances. Public employee speech exposing government corruption, data manipulation, or institutional fraud lies at the absolute apex of First Amendment protection. *Lane v. Franks*, 573 U.S. 228, 235–36 (2014); *Matthews v. City of New York*, 779 F.3d 167, 174 (2d Cir. 2015). When a public educator exposes systemic, top-down grade-fixing and institutional record falsification designed to fraudulently inflate municipal metrics, the speech does not merely concern internal classroom management. It directly addresses a matter of vital public concern: the educational integrity of the municipal school district, the honest expenditure of public funds, and the accurate reporting of public records.

*Lane*, at 236; *Bernheim v. Litt*, 79 F.3d 318, 325 (2d Cir. 1996) (holding that reporting a principal's misrepresentation of student performance data is protected speech on a matter of public concern).

**3. Professional Ethics and Municipal Integrity**

Appellant's dual status as a public educator and an officer of the court underscores the public necessity of First Amendment protection in this context. Under controlling doctrine, a public employer cannot utilize administrative coercion to force an employee who owes fiduciary and ethical duties to the public into abetting institutional fraud or silence. See *Wieder v. Skala*, 80 N.Y.2d 628, 635–36 (1992); *Jackler*, at 241. By penalizing Appellant for refusing to endorse administrative falsifications and for subsequently exposing that fraud to higher authority, Defendants violated core Second Circuit First Amendment jurisprudence established to safeguard civic governance and public integrity

**POINT III: THE DISTRICT COURT ERRED DE NOVO UNDER RULE 12(b)(6) BY APPLYING A SUMMARY-JUDGMENT STANDARD, MISCALCULATING SUMMER TOLLING, AND RETROACTIVELY STRIPPING PRO SE SPECIAL SOLICITUDE**

**A. The Court Applied an Incorrect Burden of Proof by Demanding "But-For" Causation at the Pleading Stage**

The District Court committed a fundamental error of law by holding Appellant to a summary-judgment-level standard of causation under Rule 12(b)(6). The court

cited *Rivera* for the proposition that an adverse action "would not have been taken absent the employee's protected speech." (A177, A192, A198) regarding insufficiency for failure to plead "but-for" cause in ADA and ADEA claims.)

This is a complete distortion of the threshold pleading rules. The Second Circuit has consistently made clear that to survive a motion to dismiss a First Amendment retaliation claim, a plaintiff is not required to prove but-for causation. Instead, a plaintiff must only allege facts that plausibly show the protected speech was a "substantial or motivating factor" in the employer's decision to take adverse action. Cf. *Cioffi*. By requiring Appellant to conclusively rule out all alternative administrative reasons for his removal prior to any discovery, the District Court artificially inflated the pleading standard to insulate the Defendants from liability. (A168–69 #1–2 for detailed evidence of Defendants' actual knowledge of union activities.) The issue at this threshold stage is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims. *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995); *Loreley.*

### C. **The Court Erred by Failing to Toll the Academic Summer Recess to Calculate Temporal Proximity**

The District Court's reliance on *Farooq and Morales* to establish a strict, binary two-month cutoff for circumstantial causation constitutes a clear error of law. The judge stated that courts in this circuit generally find periods greater than two months too attenuated to support an inference of causation (A177). This linear calculation directly conflicts with this Court's controlling precedent in *Gorman-Bakos v. Cornell Cooperative Extension*, which explicitly declared: "This Court has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship." 252 F.3d 545, 554 (2d Cir. 2001).

The District Court's rigid application of a binary two-month cutoff for causation fails to account for the "context-specific delay" standard established in *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009). By ignoring the operational reality of the academic summer recess, the Court effectively distorted the true temporal proximity; under *Espinal*, a period of operational inactivity does not sever the causal chain when the employer acts at the very first available opportunity upon the resumption of duties.

By applying a mechanical two-month rule, the District Court willfully ignored the operational calendar of the New York City school system. The 3-month calendar gap between the June 18, 2022 New York Post exposé and the September 14, 2022

investigation opening and the resulting October 6, 2022 exile spanned an un-operational summer recess. This Court's decision in *Espinal* firmly established that context-specific delays, such as an ongoing administrative transition or a period of operational inactivity, do not sever the causal chain. 558 F.3d 119, 129 (2d Cir. 2009). When the school year resumed in September, the Defendants acted at the very first opportunity by stripping Appellant's per-session allocation on September 30, 2022, placing him on a bad-faith TIP on October 4, 2022, and exiling him on October 6, 2022. The active operational proximity is less than four weeks.

**D. Leniency Cannot Be Retroactively Revoked for Pleadings Filed as a Non-Attorney**

The structural timeline of this litigation reveals a critical procedural error by the trial judge. The court relied on *Bank v. Alleviate Tax, LLC* (E.D.N.Y. 2024) to establish that pro se attorneys are categorically barred from receiving special consideration, using its December 2024 Text Orders to permanently strip Appellant of his pro se status (A263).

This reliance is a clear error of law. Appellant filed the initial, threshold Complaint pro se on March 5, 2024. At this time, Appellant was not a licensed attorney; he

was an unrepresented music teacher. He was not sworn into the bar until July 16, 2024.

The Second Circuit has made clear that the status of a litigant at the time of the filing dictates the standard of review for that pleading. A subsequent change in professional status cannot be used as a time-traveling judicial mechanism to retroactively penalize a litigant for an initial filing drafted without the benefit of legal credentials. Furthermore, under *Tracy v. Freshwater*, special solicitude is an equitable doctrine that must be calibrated based on the "nature of the litigation" and the "relative experience" of the individual. 623 F.3d 90, 102 (2d Cir. 2010). To hold that an uncompensated teacher, facing an institutional data cover-up, loses all equitable protections the exact split-second he takes an oath of admission constitutes an illogical, formalistic trap.

The District Court's dismissal order further violates Rule 12(b)(6) by engaging in impermissible credibility determinations. By branding Appellant's 35-page factual alignment as "revisionist readings," the court usurped the role of the jury and improperly weighed evidence at the threshold pleading stage, where all allegations must be taken as true.

---

## POINT IV: THE DISTRICT COURT ERRED IN ACCEPTING DEFENDANT'S ILLUSORY PRODUCTION AS "POSSESSION" AND ABUSED ITS DISCRETION BY UNCRITICALLY REPLICATING DEFENDANTS' UNSUBSTANTIATED CLAIMS IN ERROR

### A. A Restrictively Timed View on a Third-Party Portal Does Not Constitute "Possession, Custody, or Control" Under Second Circuit Precedent

The District Court fundamentally erred by holding that Appellant was in "possession" of the critical electronic data at issue. As established in the record, Defendant did not provide tangible, downloadable, or permanently accessible documents. Instead, Defendant unilaterally provided highly restricted access to a third-party portal for a brief 15-day window. Under established Second Circuit jurisprudence, the touchstone of discovery obligations is actual "possession, custody, or control" (*In re Marc Rich & Co., A.G.*, 707 F.2d 663 [2d Cir. 1983]); *SEC v. Collins*. The Circuit defines control as the "practical ability to obtain the materials." A at. By treating an ephemeral, third-party viewing window as a completed, permanent production, the District Court expanded the concept of "possession" far beyond the boundaries established by this Court.

### B. The District Court Condoned a Bad-Faith, Obstructive "Document Dump" in Direct Violation of Rule 34

Even if the portal access could somehow be construed as a production, the structural composition of the data violated Federal Rule of Civil Procedure

34(b)(2)(E). The record confirms that Defendant executed a textbook, bad-faith "document dump" consisting of over 1,000 megabytes (1k+ MB) of unindexed, unlabeled, highly duplicative, and completely unresponsive "noise" designed to obscure relevant evidence.

Federal Rule of Civil Procedure 34(b)(2)(E)(i)-(ii) explicitly mandates that a party must produce ESI in a "reasonably usable form" and organize it to correspond to the categories in the request. As the Southern District of New York noted in *SEC v. Collins & Aikman Corp*., 256 F.R.D. 403 (S.D.N.Y. 2009), a responding party cannot simply "dump" massive quantities of unorganized, unindexed documents on an adversary and expect them to hunt for the needle in the haystack. Weaponizing a 15-day expiration window while knowing Appellant was out of the country, combined with flooding the portal with non-responsive digital white noise, constitutes intentional obstruction. The District Court's failure to reject this abusive discovery tactic is an abuse of discretion requiring reversal.

**C. The District Court Erred by Blindly Replicating Defendant's Unsubstantiated Assertions Without Independent Analysis**

The District Court's Memorandum and Order dated January 2, 2026, reveals a deeper, structural defect: the Court failed to engage in an independent,

substantiated evaluation of the facts. Instead, the Court merely replicated, verbatim or near-verbatim, the unsubstantiated assertions set forth in the Defendant's Motion to Dismiss (MTD) and subsequent oppositions.

As detailed in Appellant's Motion to Vacate (MTV) and the supporting exhibits of new evidence—which the District Court completely ignored—the docket clearly demonstrates that Defendant's claims lacked any foundation in the record. Appellate review is frustrated when a lower court adopts a party's factual assertions wholesale without checking them against the clear contradictions present in the exhibits and docket history. By taking Defendant's word as gospel while ignoring the clear factual barriers Appellant faced overseas, the District Court abdicated its role as an impartial finder of fact, resulting in an order that is unsupported by substantial evidence.

---

**POINT V: THE DISTRICT COURT ERRED IN ITS JULY 18, 2025 ORDER BY MISUSING JUDICIAL NOTICE TO IMPORT EXTRINSIC MATERIAL, RE-WRITE THE CAUSAL TIMELINE, AND RESOLVE DISPUTED FACTS AGAINST PLAINTIFF.**

The district court committed a clear legal error by looking past the four corners of the FAC, thereby triggering Rule 12(d) mandating conversion to a Rule 56 motion for summary judgment and barring any dismissal prior to permitting non-movant

adequate opportunity to conduct discovery on essential facts (*Loreley*, *Swierkiewicz*; also compare *Trebor*, *Sutera*, *Bergeron*, *Pangburn*; A112–22, A159–68). It used judicial notice to resolve core issues of timeline and intent in favor of Defendants. Under controlling Second Circuit law, a court may take judicial notice of online public records or guidelines only to establish the narrow fact of their baseline existence or literal contents. It cannot adopt external interpretations to resolve or redefine the specific disputed facts of the case. The court directly violated this standard in two specific ways:

- **Improper Verification of the Live New York Post URL**: The FAC explicitly alleged that the initial version of the June 18, 2022 article uniquely identified Appellant as a "music teacher" with five years residency at the School. The court took judicial notice of the live, modified website text to rule that this identifying data never existed. TThe District Judge specifically noted conducting online research, stating that the live URL "contains none of the so-called identifying information that Plaintiff alleges" (A178 n.8). The Appellant  explicitly pleaded that three structural versions of the article existed. By treating a live, post-litigation URL as conclusive evidence to overwrite Appellant's well-pleaded facts, the judge violated the standard articulated in *Swierkiewicz* at 514. This active fact-finding ignored that the first version was scrubbed post-publication. The court used judicial notice to

settle a heavily contested factual dispute regarding employer awareness. This breached the explicit boundaries of Federal Rule of Evidence 201.

- **Fabrication of a "Backward Causality" Timeline**: The court used extrinsic references to mischaracterize the sequence of Appellant's involuntary reassignment. The FAC pleaded a direct, chronological line of retaliation. Appellant's whistleblower contact occurred on June 13, 2022, and the article ran on June 18, 2022. The actual investigation leading to removal was alleged to have opened September 15, 2022 based on allegedly false anonymous online allegations, filed by Appellees on September 14, 2022.

By utilizing public records to override the plain text of the complaint, the court failed to accept Plaintiff's allegations as true. This misapplication of judicial notice transformed a standard Rule 12(b)(6) determination into an impermissible summary adjudication without granting discovery. The court's reliance on external definitions to dismiss the First Amendment retaliation and discrimination claims requires total reversal.

---

## POINT VI: THE DISTRICT COURT ERRED BY MINIMIZING SYSTEMIC RETALIATION AND PHYSICAL ASSAULT AS MERE WORKPLACE "QUARRELS"

### A. The Court Substituted Actionable Retaliation for a Deflated, Diminishing Narrative

The District Court's characterization of the operative complaint reveals a profound failure to apply the mandatory protections of Rule 12(b)(6). In the background section of the dismissal order, the court summarized a seven-year campaign of systemic data fraud, targeted retaliation, and dangerous workplace conditions as a collection of personal "disagreements, misunderstandings, and quarrels."

Appellant did not allege a series of minor workplace squabbles. Appellant plainly factually alleged an organized, punitive campaign to strip his contractually protected per-session allocation from day one, systemic coercive data-manipulation involving forced grade-fixing, and the intentional exploitation of a documented migraine disability.

### B. Minimizing Physical Assault and Workspace Hazards Violates the Pleading

The extreme nature of the court's flawed logic is highlighted by its handling of the student actions. Appellant alleged that students targeted him with severe sexual harassment, hostile recording campaigns, and an explicit physical assault where a piano bench was pulled from under him mid-instruction, causing him to crash to the floor. To categorize a dangerous physical assault on a teacher inside an active

classroom resulting in surgical aggravation and salary deprivation, under *Muldrow* actionable adverse items, s an "incident to which School administrators allegedly did not react," and to lump it under the umbrella of a "workplace misunderstanding," is completely illogical. The Second Circuit has long held that a district court cannot engage in semantic wordplay to downplay a plaintiff's allegations of physical danger or severe civil rights deprivation at the pleading phase.

**POINT VII: THE DISTRICT COURT APPLIED A LEGALLY FLAWED STANDARD UNDER TITLE IX BY RULING THAT THE DOE LACKS SUBSTANTIAL CONTROL OVER ITS CLOSED @WCBRYANTHS.ORG AND CURRENT @SCHOOLS.NYC.GOV EMAIL WORKSPACE**

The District Court committed a profound error of law by ruling that because the 39 sexually explicit and abusive messages were sent from anonymous digital routing headers, the DOE lacked "control" over the context of the harassment. The court insisted that an employee must allege that anonymous digital messages were sent from a physical school campus, during school hours, or from school-owned hardware. Indeed they were, and this was alleged; however, notwithstanding, the digital reality of the modern workplace dictates that the platform is the workspace. As alleged in the FAC, every single one of the 39 harassing messages was delivered directly to Appellant's mandatory, employer-provided @wcbryanths.org

email account. This email portal is a closed, proprietary, employer-mandated digital workspace. Appellant was structurally required by his employment contract to access, monitor, and utilize this network to receive administrative assignments while placed in administrative exile. (See Exhibit A, Defect #22, #23 for detailed evidence regarding DOE's absolute control over the @wcbryanths.org and @schools.nyc.gov environment.)

By executing absolute ownership over the network gateway, the DOE exercises total regulatory authority over the digital environment. The institution possesses the exclusive, unilateral technical capability to implement server-side security, track internal Internet Protocol routing logs, deploy forensic keyword filters, and block domain-level threats. For the District Court to rule that the DOE lacked control over the context of harassment occurring inside its own proprietary database is a thoroughly unsustainable legal conclusion.

Furthermore, the District Court's reliance on *Doe v. Sacks*, 714 F. Supp. 3d 402 (S.D.N.Y. 2024), where a university was found to lack substantial control over an anonymous Google spreadsheet accessible via QR codes, is a complete legal failure. In Sacks, the offending spreadsheet was hosted on a third-party corporate

platform (Google) completely outside the university's internal server infrastructure.

Here, by contrast, the harassment occurred on the DOE's proprietary closed servers. By flattening the distinction between an un-hosted public Google document and a private, employer-mandated network inbox, the trial judge utilized an incorrect legal standard to immunize the school district from its statutory Title IX obligation. Notably, unlike the platform in *Sacks*, the DOE exercises exclusive technical, forensic, and regulatory control over this digital workspace, including the unilateral authority to monitor routing logs and deploy security filters (*Zeno v. Pine Plains Cent. Sch. Dist.*, 702 F.3d 655 (2d Cir. 2012).

## POINT VIII: THE DISTRICT COURT ABUSED ITS DISCRETION UNDER RULES 59(e) AND 60(b) BY DEPLOYING A FLAWED MATHEMATICAL TIMELINE TO EVADE REVIEW OF DEFENDANT MISCONDUCT

### A. The Court Committed Material Mathematical Error by Overstating the Window of Accessibility

In its January 2, 2026 order, the District Court denied post-judgment relief by stating that Appellant possessed the Defendants' discovery production for "19 days" prior to judgment and failed to show "due diligence" (A263).

This calculation is a demonstrably false misconstruction of the record.

The Defendants dropped their voluminous, un-indexed “data dump” on July 2, 2025. The District Court issued its substantive Memorandum & Order terminating the case on July 18, 2025. A plaintiff cannot submit curing amendments or brief a court after that court has already issued its final, case-terminating decision. Furthermore, the record confirms that the DOE completely revoked and deactivated Appellant’s network credentials on July 15, 2025 without notice.

The court’s finding of lack of “due diligence” is predicated on a demonstrably false mathematical premise. The court erroneously calculated the window of access as 19 days, when the record establishes it was exactly 13 days. This factual miscalculation, which overstates the window by nearly 50%, constitutes a clear abuse of discretion and effectively insulated the Defendants’ discovery sabotage from equitable review (*State St.* at 176; *see* A233–35, #12, 17 for detailed timeline corrections and evidence of administrative awareness.)

B. **The Doctrine of Equitable Estoppel Bars Defendants from Asserting a Lack of Due Diligence After Unilaterally Revoking Access**

The District Court applied an arbitrary and inequitable legal standard by concluding that Appellant failed to demonstrate “justifiable ignorance” or “due diligence” regarding newly discovered evidence under Rule 59(e), noting that

"evidence is not newly discovered if it was in the moving party's possession prior to judgment" (A263). Under the doctrine of equitable estoppel, a party is precluded from asserting a procedural defense when that party's own conduct actively caused the adversary's non-compliance.

The record confirms that on July 15, 2025, while Appellant was known to be abroad and attempting to access the produced "data dump," the Department of Education unilaterally terminated Appellant's network credentials. This act did not merely inconvenience Appellant; it physically severed his link to the digital workspace where the verified timeline evidence and forensic email logs were hosted. A defendant who actively locks the plaintiff out of the evidence room cannot subsequently ask the court to dismiss the case because the plaintiff failed to review the evidence quickly enough. To find a lack of "due diligence" because Appellant could not forensically decode this corrupted file structure within 13 days ignores the undisputed transnational conditions on the record: (1) Appellant was located overseas in Taiwan, working grueling 10-to-12-hour days without advanced data hardware; and (2) Appellant was actively navigating the severe infrastructure and utility fallout of a regional typhoon. By cutting the connection, the Defendants acted with unclean hands, and the District Court's failure to toll the due diligence clock constitutes a clear abuse of discretion.

**C. The Court Erred by Unilaterally Re-Characterizing Misconduct Under Rule 59(e) to Evade Rule 60(b)(3) Review**

In Footnote 4 of its order, the District Court noted that because Appellant filed his motion within 28 days, it would "construe" his claims exclusively under Rule 59(e). (*See* A263, n.4.) This re-characterization was highly punitive. Rule 59(e) generally prohibits the introduction of data available before judgment, allowing the judge to use the 13-day window as an absolute shield.

Appellant's motion explicitly detailed the Defendants' bad-faith chronological manipulation, specifically, backdating a catastrophic September 15, 2022 investigation to April 6, 2022, to break the appearance of First Amendment causation (which was knowingly advanced by the defense and proven withheld until immediately after judgment). These factual allegations squarely invoke Rule 60(b)(3), which mandates relief from judgment in cases of "fraud, misrepresentation, or misconduct by an opposing party."

Under Rule 60(b)(3), the proper standard is whether the opposing party's conduct "prevented the moving party from fully and fairly presenting his case" (*State St.* at 176). By forcing the motion into the Rule 59(e) box, the sidestepped the

misconduct analysis, allowing the Defendants to successfully benefit from their own discovery sabotage.

---

**POINT IX: THE DISTRICT COURT VIOLATED PROCEDURAL DUE PROCESS BY DISMISSING THE ACTION WITH PREJUDICE WHILE MATERIAL DISCOVERY REMAINED FROZEN**

The District Court's dismissal, issued while the discovery engine remained gridlocked, constitutes a fundamental departure from the Second Circuit's mandate that courts facilitate, rather than obstruct, the development of a factual record. See *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 138 (2d Cir. 2007) (party cannot be penalized for discovery failures when court inhibits discovery). By effectively "freezing" the Rule 36 Requests for Admissions, the court created an impermissible "procedural trap," denying Appellant the practical opportunity to protect his interest, a clear violation of procedural due process (*Knopf v. Esposito*, 829 F. App'x 526, 529 (2d Cir. 2020)). Dismissal with prejudice is a "drastic remedy" reserved for extreme, willful disobedience; it is entirely inappropriate to impose such a sanction where the procedural deadlock was a function of the court's own inaction (*John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc.*, 588 F.2d 24, 28-29 (2d Cir. 1978); *Sutera v. Schering Corp.*, 73 F.3d 13, 18 (2d Cir. 1995), *Trebor Sportswear, Inc. v. The Limited, Inc.*, 865 F.2d 506, 511; *Muto v. CBS Corp*., 668 F.3d 53 (2d Cir. 2012)).

**POINT X: THE DISTRICT COURT ABUSED ITS DISCRETION AND ERRED AS A MATTER OF LAW IN DENYING PLAINTIFF'S TIMELY RULE 59(e) AND RULE 60(b)(3) MOTION BY IMPROPERLY USURPING THE ROLE OF THE JURY AND ADOPTING DEFENDANTS' MATERIAL MISREPRESENTATIONS CONCERNING THE INVESTIGATION TIMELINE**

A. **The District Court Impermissibly Engaged in Premature Fact-Finding and Usurped the Jury's Role on a Motion to Vacate**

In its Memorandum & Order dated January 2, 2026, the District Court abused its discretion by engaging in improper, threshold fact-finding and weighing evidence regarding the timeline of Defendants' retaliatory investigations. On page 10 of the Order, the District Court summarily adopted Defendants' factual assertion that no separate investigation commenced on September 15, 2022, rejecting Plaintiff's well-pleaded factual allegations and evidentiary submissions (A270).

It is a foundational tenet of federal practice that at the pleading and reconsideration stages, a court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party (*In re Hain Celestial Grp., Inc. Sec. Litig.*, 20 F.4th 131, 133 (2d Cir. 2021); *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007)). By declaring that Appellant failed to conclusively establish the September 15, 2022 investigation start date on the face of the post-judgment record (A270), the District Court substituted its own credibility determination for that of a jury.

Under controlling Supreme Court and Second Circuit precedent, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge" (*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) accord *Loreley*). Whether the September 15, 2022 investigation constituted a distinct, retaliatory action separate from an unnoticed April 6, 2022 inquiry is a genuine, material factual dispute that the District Court improperly resolved against Plaintiff as a matter of law.

B. **Defendants Committed Actionable Misrepresentation and Misconduct Under Rule 60(b)(3) and Rule 59(e) by Conflating Unrelated Investigations to Sever Causation**

Relief under Federal Rule of Civil Procedure 60(b)(3) is required where an adverse party engages in fraud, misrepresentation, or misconduct that prevents the movant from fully and fairly presenting his case. (*State St.* at 176; *Hazel-Atlas Glass Co. v. Hartford-Empire Co*., 322 U.S. 238, 246 (1944) ("The public welfare demands that the agencies of public justice be not so impotent that they must always be mute and helpless victims of deception and fraud.")).

Here, Appellant filed his Motion to Vacate, Alter, or Amend the Judgment on August 15, 2025, precisely 28 days following the entry of judgment on July 21, 2025, thereby preserving relief under both Rule 59(e) and Rule 60(b)(3). In his motion and supporting filings, Plaintiff demonstrated that Defendants fraudulently and perjuriously insisted that Plaintiff's administrative reassignment on October 6,

2022 (A44 ¶132) stemmed from an investigation initiated on April 6, 2022 (A233–35, #12, 17; A253–55).

Defendants' deliberate conflation of these dates was calculated to artificially break the chain of causation between Appellant's protected First Amendment whistleblower activity, specifically, his June 15–18, 2022 disclosures to the *Post* regarding academic fraud and grade-fixing (A42–43 ¶¶122–23; A228–32), and his sudden removal from the classroom on October 6, 2022 (A44 ¶132).

The record evidence submitted by Plaintiff reveals Defendants' deliberate deception:

1. **The True Inception of the Reassignment Investigation**: The exhibit documentation (ECF No. 79, Exhs. H & I (not included in Appendix); A249 #1) confirms an online submission reported by Morales on September 14, 2022, and an investigation opening date ofSeptember 15, with investigators responding by September 21, 2022. This occurred a mere five school days into the Fall 2022 semester and shortly following Plaintiff's protected activity (A233–34 #12; A257).
2. **Concealment of the April 6, 2022 Investigation**: The separate, stale investigation dated April 6, 2022 was never noticed to Plaintiff until December 6, 2024—over two and a half years later—during initial discovery disclosures (A59 ¶217; A103 n.3; A235 #17).

Defendants maintained exclusive possession of documents showing the closed status of the April investigation, yet falsely asserted throughout dispositive motion practice that the October reassignment was merely a continuation of the April 6 inquiry (A253; A270). This deliberate misrepresentation directly misled the District Court into finding an absence of temporal proximity and causation (A178; A270). Furthermore, documentation showing conclusively that the April 6, 2022 investigation had closed, prior to whistleblowing to the *Post* (and thus not being an instigating factor in the September 2022 investigation) was withheld by the Defendant-Appellees till 4 days after the post-judgment ruling in January 2026.

C. **Defendants' Pattern of Delays, FOIL Failures, and Discovery Suppression Compounded the Fraud Upon the Court**

Defendants' bad-faith misrepresentation regarding the investigation timeline is further corroborated by their systemic withholding of responsive records:

- **Delayed Discovery Production**: Defendants withheld critical electronic discovery beyond Court-mandated deadlines, dumping voluminous productions on July 2, 2025 (A252 n.2; A265)—only 19 days prior to the entry of judgment—while Plaintiff was out of the country on an approved educational program (A252 n.2).
- **FOIL Non-Disclosure and Incomplete Responses**: Following the initial unannounced disclosure on December 6, 2024, Plaintiff filed Freedom of

Information Law (FOIL) Request F24,799 on December 9, 2024, seeking full records of the unnoticed April investigation (A59 ¶¶217–220). This request sat unfulfilled for over a year past its due date. Moreover, a prior FOIL request filed on April 20, 2024, seeking all investigations against Plaintiff, returned only two known items while fraudulently suppressing the April 2022 investigation and at least 15 other records (A233–34 #12; A249).

When an adverse party controls material information, suppresses it in discovery, and actively misleads the court regarding the timeline of retaliatory acts, Rule 60(b)(3) and Rule 59(e) mandate that the judgment be vacated. See *Lonsdorf v. Seefeldt*, 47 F.3d 893, 897 (7th Cir. 1995) (holding that where a party engages in misrepresentation, the movant need only show that the conduct prevented a full and fair presentation of the case); *State Street Bank*, 374 F.3d at 176.

By taking Defendants' misrepresentations as verified facts and rejecting Plaintiff's well-pleaded timeline at the threshold stage, the District Court committed reversible error. The District Court's January 2, 2026 Order must be reversed, the judgment vacated, and the matter remanded for full discovery and trial.

**D. Note on Judicial Impartiality and Individual Chamber Rules**:

To preserve the public appearance of absolute impartiality, a tribunal must adhere to standards that remain entirely neutral regarding the immutable characteristics or

status of the appearing parties and counsel. Under established Second Circuit and Supreme Court precedent, the core mandate of Due Process requires that all litigants appear before a forum free from any perception of preferential or disparate treatment based on demographic classifications. See, e.g., *United States v. Robin*, 553 F.2d 574, 578 (2d Cir. 1976) (stressing that judicial proceedings must maintain both actual impartiality and the appearance of fairness); *Caperton v. A.T. Massey Coal Co*., 556 U.S. 868, 889 (2009) (holding that the appearance of judicial neutrality is essential to due process).

Where, as in the instant case, an initial set of Individual Practice Rules contains provisions extending explicit procedural or oral-argument considerations conditioned on race, gender, age, or experience level—even if subsequently amended or removed, as was the case here in 2025—it creates an objective concern regarding disparate treatment for those litigants who do not fall within those preferred categories. To ensure public confidence in the equal administration of justice under 28 U.S.C. § 2106, judicial proceedings must be conducted—and perceived to be conducted—with strict, objective neutrality toward all parties before the court.

**POINT XI: TO PRESERVE THE PUBLIC APPEARANCE OF JUSTICE UNDER 28 U.S.C. § 2106, THIS MATTER MUST BE REASSIGNED TO A DIFFERENT DISTRICT JUDGE UPON REMAND**

Pursuant to the supervisory powers granted by 28 U.S.C. § 2106, this Court may direct that a case be reassigned to a different district judge on remand to preserve the public appearance of justice. *United States v. Robin*, 553 F.2d 574, 578 (2d Cir. 1976). Reassignment is dictated where the original judge would face substantial difficulty putting out of his mind previously expressed views, or where a pervasive procedural asymmetry has compromised the equity of the forum.

The record in this matter reflects an entrenched lack of objective neutrality, necessitating reassignment to preserve the appearance of impartiality. Throughout the underlying proceedings, the judge repeatedly threatened Appellant with formal sanctions for harmless, clerical variations under his Individual Practice Rules (such as misconstruing a timely electronic submission as an untimely filing), while consistently forgiving massive, bad-faith timeline defaults by the institutional Defendants. The depth of this partiality is explicitly captured in Footnote 8 of the January 2, 2026 order, where the judge openly states that he “does not credit” Appellant’s detailed, 35-page record clarifications, flatly branding plain factual allegations as uncredited, “revisionist readings” (A176 n.8).

Under Rule 12(b)(6), a district judge possesses zero legal authority to make pleading credibility determinations (*In re Hain*; *Loreley*). By choosing to treat the Defense’s unsworn motion papers as absolute gospel truth while flatly declaring that he “refused to credit” Appellant’s cross-referenced factual alignments, the trial

judge fully stepped out of his role as an impartial arbiter. Because the trial judge has firmly locked in his position and declared Appellant's factual corrections to be "improper attempts to re-litigate," and explicit statement that he does not credit pleaded facts, he cannot fairly evaluate this matter with objective clarity. This Court should direct that the case be reassigned to a different district judge upon remand.

## VIII. **CONCLUSION AND RELIEF SOUGHT**

For the foregoing reasons, Plaintiff-Appellant Michael J. Eisenberg respectfully requests that this Court:

1. **REVERSE** the July 18, 2025 Order and July 21, 2025 Final Judgment of the District Court dismissing the First Amended Complaint with prejudice under Federal Rule of Civil Procedure 12(b)(6);
2. **REVERSE** the January 2, 2026 Order denying Plaintiff-Appellant's Motion to Vacate, Alter, or Amend the Judgment pursuant to Federal Rules of Civil Procedure 59(e) and 60(b);
3. **REMAND** this action to the United States District Court for the Eastern District of New York with instructions to:

- Reevaluate Plaintiff-Appellant's discrimination and retaliation claims under the Supreme Court's "some harm" standard set forth in *Muldrow v. City of St. Louis*;
- Apply appropriate academic summer tolling to temporal proximity calculations;
- Reassess the Title IX claim under the proper legal standard governing employer-controlled digital workspaces; and
- Unfreeze and resolve all outstanding Rule 36 Requests for Admissions and pending discovery motions before proceeding;

4. **ORDER** that this matter be reassigned to a different District Judge upon remand pursuant to 28 U.S.C. § 2106 and the standards of *United States v. Robin* to preserve the appearance of justice and objective impartiality; and

5. **GRANT** such other, further, or alternative relief as this Court deems just, equitable, and proper.

Dated: August 2, 2026

Respectfully submitted,

/s/ Michael J. Eisenberg, Esq.
Plaintiff-Appellant Pro Se
23-50 Waters Edge Drive Apt. 6L
Bayside, NY 11360
516-395-7644
mjeisenberg@gmail.com

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS**

1. **Type-Volume Limitation:** This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and Second Circuit Local Rule 32.1(a)(4)(A) because this brief contains 12,528 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) (such as the Cover Page, Corporate Disclosure Statement, Table of Contents, Table of Authorities, Signature Block, Certificate of Service, and this Certificate of Compliance).
2. **Typeface and Type-Style Requirements:** This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using **Microsoft Word** in **14-point Times New Roman** font.
3. **Virus Scan Certification:** Pursuant to Second Circuit Local Rule 31.1, the PDF file of the brief submitted electronically via the Court's CM/ECF system has been scanned for viruses using Trend Micro house Call and, according to the program, is free of viruses.

Dated: August 2, 2026

Respectfully submitted,

/s/ Michael J. Eisenberg

Michael J. Eisenberg, Esq. *Plaintiff-Appellant Pro Se*
23-50 Waters Edge Drive, Apt. 6L
Bayside, NY 11360
Tel: (516) 395-7644
Email: mjeisenberg@gmail.com