# No. 26-234

IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

Michael Eisenberg,
Plaintiff-Appellant,

v.

New York City Department of Education,
Defendant-Appellee.

On Appeal from the United States District Court
for the Eastern District of New York

**BRIEF OF THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION AS AMICUS CURIAE IN SUPPORT OF APPELLANT AND IN FAVOR OF REVERSAL**

CATHERINE ESCHBACH
Acting General Counsel

CHRISTOPHER LAGE
Deputy General Counsel

JENNIFER S. GOLDSTEIN
Associate General Counsel

JEREMY D. HOROWITZ
Assistant General Counsel

CHELSEA C. SHARON
Attorney

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Office of General Counsel
131 M St. N.E., 5th Floor
Washington, D.C. 20507
(202) 921-2889
chelsea.sharon@eeoc.gov

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii

STATEMENT OF INTEREST ........ 1

STATEMENT OF THE ISSUES ........ 2

STATEMENT OF THE CASE ........ 2

A. Statement of the Facts ........ 2

B. District Court's Decisions ........ 4

ARGUMENT ........ 6

I. The district court applied an incorrect standard in concluding that certain alleged discriminatory actions were not sufficiently adverse. ........ 6

A. The Supreme Court abrogated this Court's prior requirement of a "materially adverse" employment action. ........ 6

B. Under the correct standard, Eisenberg plausibly alleged at the motion-to-dismiss stage that the relevant employment actions caused "some harm" respecting his employment terms or conditions. ........ 11

II. The district court erred by subjecting Eisenberg's ADEA retaliation claim to the same adversity test it used for his discrimination claim. ........ 16

CONCLUSION ........ 20

CERTIFICATE OF COMPLIANCE ........ 22

CERTIFICATE OF SERVICE ........ 23

## TABLE OF AUTHORITIES

### Cases

*Ahmed v. Hamtramck Pub. Schs.*,
178 F.4th 975 (6th Cir. 2026) .......... 14

*Anderson v. Amazon.com, Inc.*,
No. 23-cv-8347, 2024 WL 2801986 (S.D.N.Y. May 31, 2024) .......... 9, 13, 14

*Arnold v. Town of Camillus*,
No. 24-2556-cv, 2025 WL 2699162 (2d Cir. Sep. 23, 2025)
(summary order) .......... 10

*Arnold v. United Airlines, Inc.*,
142 F.4th 460 (7th Cir. 2025) .......... 8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 12

*Back v. Bank Hapoalim, B.M.*,
No. 24-1064-cv, 2024 WL 4746263 (2d Cir. Nov. 12, 2024)
(summary order) .......... 8, 10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 12

*Brown v. City of Syracuse*,
673 F.3d 141 (2d Cir. 2012) .......... 7

*Burlington N. & Santa Fe Ry. Co. v. White*,
548 U.S. 53 (2006) .......... 16, 18, 19

*Byas v. Yonkers Pub. Schs.*,
No. 23-cv-8437, 2025 WL 963977 (S.D.N.Y. Mar. 31, 2025) .......... 10

*Cangro v. N.Y.C. Dep't of Fin.*,
--F.4th--, 2026 WL 2130187 (2d Cir. July 24, 2026) .......... 10

*Carr v. N.Y.C. Transit Auth.*,
76 F.4th 172 (2d Cir. 2023) .......... 16, 17, 20

*Clarke-Green v. N.Y.C. Dep't of Educ.*,
No. 17-cv-778, 2019 WL 13149583 (E.D.N.Y. Mar. 20, 2019)....................5, 9

*Daniels v. Hofstra Univ.*,
No. 21-cv-2920, 2025 WL 2783282 (E.D.N.Y. Sep. 30, 2025)...................9, 10

*Dawson v. Conn. Dep't of Corr.*,
No. 3:25-cv-210, 2026 WL 632674 (D. Conn. Mar. 6, 2026)..................14, 15

*Desiderio v. Hudson Techs., Inc.*,
No. 22-cv-541, 2025 WL 1285278 (S.D.N.Y. May 2, 2025)..........................15

*Galabya v. N.Y.C. Bd. of Educ.*,
202 F.3d 636 (2d Cir. 2000) ........................................................................7

*Herkert v. Bisignano*,
151 F.4th 157 (4th Cir. 2025).....................................................................17

*Kassner v. 2nd Ave. Delicatessen Inc.*,
496 F.3d 229 (2d Cir. 2007) ........................................................................7

*Littlejohn v. City of N.Y.*,
795 F.3d 297 (2d Cir. 2015) .......................................................................13

*Lorillard v. Pons*,
434 U.S. 575 (1978).......................................................................................8

*McBeth v. City of N.Y.*,
No. 23-cv-10389, 2025 WL 951439 (S.D.N.Y. Mar. 28, 2025) ......................10

*Milczak v. Gen. Motors, LLC*,
102 F.4th 772 (6th Cir. 2024).......................................................................8

*Millea v. Metro-N. R.R. Co.*,
658 F.3d 154 (2d Cir. 2011) .......................................................................17

*Monaghan v. Worldpay US, Inc.*,
955 F.3d 855 (11th Cir. 2020).....................................................................19

*Morrison v. Potter*,
363 F. Supp. 2d 586 (S.D.N.Y. 2005) .........................................................11

*Muldrow v. City of St. Louis*,
601 U.S. 346 (2024)....................1, 2, 6, 7, 8, 15, 17

*Schulman v. Dep't of Educ. of City of N.Y.*,
No. 24-cv-8322, 2026 WL 573298 (S.D.N.Y. Mar. 2, 2026) ....................9

*Shultz v. Congregation Shearith Israel of City of N.Y.*,
867 F.3d 298 (2d Cir. 2017) ....................2

*Stidhum v. 161-10 Hillside Auto Ave, LLC*,
No. 25-490, 2026 WL 761394 (2d Cir. Mar. 18, 2026)
(summary order) ....................10, 11

*Stratton v. Bentley Univ.*,
113 F.4th 25 (1st Cir. 2024) ....................19

*St. Juste v. Metro Plus Health Plan*,
8 F. Supp. 3d 287 (E.D.N.Y. 2014) ....................18

*Thomas v. JBS Green Bay, Inc.*,
120 F.4th 1335 (7th Cir. 2024)....................11, 12

*Tumbleson v. Lakota Loc. Sch. Dist.*,
175 F.4th 773 (6th Cir. 2026)....................14

*Uddin v. City of N.Y.*,
316 F. App'x 4 (2d Cir. 2008) ....................18

*Vega v. Hempstead Union Free Sch. Dist.*,
801 F.3d 72 (2d Cir. 2015) ....................7, 17, 18

*Velikonja v. Gonzales*,
466 F.3d 122 (D.C. Cir. 2006) (per curiam) ....................18

*Vogel v. CA, Inc.*,
662 F. App'x 72 (2d Cir. 2016) ....................19

*Walsh v. HNTB Corp.*,
169 F.4th 330 (1st Cir. 2026) ....................8, 12, 13

*Williams v. R.H. Donnelley, Corp.*,
368 F.3d 123 (2d Cir. 2004) ........ 8

*Ziparo v. CSX Transp., Inc.*,
160 F.4th 314 (2d Cir. 2025) ........ 10

*Zoulas v. N.Y.C. Dep't of Educ.*,
400 F. Supp. 3d 25 (S.D.N.Y. 2019) ........ 11

**Statutes**

Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 *et seq*. ........ 1, 6, 7

29 U.S.C. § 623(a)(1) ........ 6, 7

29 U.S.C. § 623(d) ........ 16

Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*. ........ 6, 7, 14, 16

42 U.S.C. § 2000e-2(a)(1) ........ 6, 7, 14

42 U.S.C. § 2000e-3(a) ........ 16

**Rules**

Fed. R. App. P. 29(a)(2) ........ 1

## STATEMENT OF INTEREST

Congress charged the Equal Employment Opportunity Commission ("EEOC") with administering and enforcing federal laws prohibiting workplace discrimination, including the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 *et seq.* ("ADEA"). This appeal involves the Supreme Court's recent rejection of a heightened standard for measuring adversity in determining whether a plaintiff has shown an adverse employment action necessary to sustain a discrimination claim. *See Muldrow v. City of St. Louis*, 601 U.S. 346 (2024). Despite the ruling in *Muldrow*, the district court here and others within this Circuit continue to apply the heightened "material adversity" standard that the Supreme Court abrogated. In addition, the district court here subjected Plaintiff's retaliation claim to this same standard, even though the Supreme Court and this Court have explained that the discrimination and retaliation adversity standards are distinct. Given the importance of these issues to the Commission's enforcement efforts, we respectfully offer our views to this Court. *See* Fed. R. App. P. 29(a)(2).

## STATEMENT OF THE ISSUES

1. Did the district court erroneously rely on a standard abrogated by the Supreme Court in *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024), in holding that only "materially adverse" employment actions could be actionable discrimination under the ADEA?

2. Did the district court err by subjecting Plaintiff's ADEA retaliation claim to this same standard and by otherwise treating the scope of actionable conduct as equivalent for Plaintiff's discrimination and retaliation claims?[1]

## STATEMENT OF THE CASE

### A. Statement of the Facts[2]

Plaintiff Michael Eisenberg—a tenured music teacher born in 1966—began working at William Cullen Bryant High School in Queens, New York, in 2017. A-21, A-22, A-24 (¶¶ 1, 8, 16, 18).[3] Eisenberg alleges that the

---

[1] EEOC takes no position on any other issue in this appeal.

[2] Because this appeal involves a dismissal for failure to state a claim, we draw these facts from Eisenberg's Amended Complaint and present them in the light most favorable to him. *See Shultz v. Congregation Shearith Israel of City of N.Y.*, 867 F.3d 298, 302 (2d Cir. 2017).

[3] Citations to "A-_" refer to Plaintiff's Appendix. *See* Dkt. 51. Citations to "R._" refer to entries on the district court's docket.

New York City Department of Education ("the Department") violated the ADEA by subjecting him throughout his time at the school to a series of discriminatory and retaliatory actions designed to "target[] [him] with the intention to reassign him from the [s]chool and replace him with a younger counterpart" and to retaliate against him for opposing this discrimination. A-63-64 (¶¶ 232-36).

These actions included: (1) denying Eisenberg the opportunity for per-session assignments (which are paid, supplemental activities outside school), A-24, A-33-34, A-38, A-48, A-54, A-59-60 (¶¶ 20, 74, 77, 98, 154, 185, 221); (2) involuntarily reassigning him away from the school, A-44 (¶ 132); (3) demoting him to substitute-teacher status upon his return from reassignment, A-47-48 (¶ 153); (4) issuing him a series of observation reports with lower-than-warranted ratings, A-26, A-28-32, A-37, A-40, A-42, A-56-57, A-63 (¶¶ 32, 44, 50, 56-57, 60, 62, 90, 92, 108, 121, 198, 202, 204, 234); (5) subjecting him to multiple misconduct investigations (that ultimately resulted in findings that the allegations were unsubstantiated), issuing disciplinary letters, and attaching to his personnel file a problem code reflecting misconduct, A-27-32, A-36-37, A-40-42, A-47-49, A-51-52, A-55, A-59, A-63 (¶¶ 42, 48, 52-53, 61-65, 89, 109, 112, 116, 152, 157, 160-61,

170, 192, 217, 234); (6) reprimanding him and embarrassing him in front of colleagues and students, A-26, A-30, A-41, A-44, A-49, A-55 (¶¶ 33, 56, 115, 132, 158, 189); and (7) misreporting his absences, which caused certain absences to be incorrectly charged against his salary, A-51, A-55-57 (¶¶ 168, 191, 197, 206).[4]

**B. District Court's Decisions**

Eisenberg, proceeding pro se, brought this suit asserting, *inter alia*, that the Department discriminated and retaliated against him in violation of the ADEA. A-20-74. The Department filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), R.41, which the district court granted. A-169-204.

With respect to Eisenberg's ADEA discrimination claim, the court concluded that only certain of the alleged discriminatory actions could qualify as actionable adverse employment actions, which the court defined as "a materially adverse change in the terms and conditions of

[4] It is not entirely clear from the Amended Complaint which of these actions are claimed to be discriminatory and which retaliatory. The district court appears to have treated all the listed actions as being asserted in connection with both Eisenberg's ADEA and retaliation claims, *see* A-189, A-193, and we do the same.

employment" that "must be more disruptive than a mere inconvenience or an alteration of job responsibilities." A-188-89 (quoting *Clarke-Green v. N.Y.C. Dep't of Educ.*, No. 17-cv-778, 2019 WL 13149583, at *7 (E.D.N.Y. Mar. 20, 2019)). Applying this definition, the court found that only "the alleged per-session opportunity denials, reassignment away from the [s]chool, and demotion to substitute status" could qualify as adverse employment actions. A-189. "[N]one of the other alleged conduct"—the observation reports, investigations and associated disciplinary letters and problem code, public reprimands, or misreporting of absences—"amounts to a materially adverse change in the terms and conditions of employment," the court said. A-189.

The court then assumed that only the same subset of conduct it deemed actionable for Eisenberg's ADEA discrimination claim—"denial of per-session opportunities, reassignment, and demotion to substitute status"—could constitute "adverse employment actions" for his ADEA retaliation claim. A-193. The court did not explain this conclusion other than to cross-reference its discussion of the discrimination claim. A-193.

Analyzing only this subset of conduct, the court found that Eisenberg did not plausibly plead an inference of discrimination for his ADEA

discrimination claim or a causal connection between his protected activity and the adverse actions for his ADEA retaliation claim. A-190-94.

Eisenberg subsequently moved to vacate, amend, or alter the judgment pursuant to Federal Rules of Civil Procedure 59(e) and 60(a). A-205-250. The district court denied that motion. A-261-72.

## ARGUMENT

### I. The district court applied an incorrect standard in concluding that certain alleged discriminatory actions were not sufficiently adverse.

#### A. The Supreme Court abrogated this Court's prior requirement of a "materially adverse" employment action.

The ADEA makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The wording of this provision is nearly identical to the prohibition against discrimination in the "terms, conditions, or privileges of employment" based on "race, color, religion, sex, or national origin" in Title VII of the Civil Rights Act of 1964 ("Title VII"). 42 U.S.C. § 2000e-2(a)(1). Prior to the Supreme Court's decision in *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024), this Court required a plaintiff bringing a discrimination claim under the ADEA or Title VII to show that he had suffered a

"materially adverse" employment action. *E.g. Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 238 (2d Cir. 2007) (ADEA); *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (ADEA); *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015) (Title VII); *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012) (Title VII).

*Muldrow*, however, rejected this heightened "materially adverse" standard for discrimination claims. 601 U.S. at 354-55. *Muldrow* held that, to establish an adverse employment action, a plaintiff must show only that the employer took an action that caused "some harm respecting an identifiable term or condition of employment." *Id.* Under this "simple injury standard," the Supreme Court explained, a plaintiff "need show only some injury respecting her employment terms or conditions" and need not show that "the harm incurred was 'significant' … [o]r serious, or substantial, or any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar." *Id.* at 355, 356 n.2, 359 (citation omitted). Although *Muldrow* was a Title VII case, its holding is equally applicable to Eisenberg's ADEA claim, given that it interpreted nearly identical "terms, conditions, or privileges" language in Title VII. *Id.* at 354; *see* 42 U.S.C. § 2000e-2(a)(1); 29 U.S.C. § 623(a)(1). Given this similar

statutory language, courts have widely applied *Muldrow* in the ADEA context. *E.g.*, *Walsh v. HNTB Corp.*, 169 F.4th 330, 339-40 (1st Cir. 2026) (collecting cases); *Arnold v. United Airlines, Inc.*, 142 F.4th 460, 470 n.21 (7th Cir. 2025); *Milczak v. Gen. Motors, LLC*, 102 F.4th 772, 787 (6th Cir. 2024); *cf. Lorillard v. Pons*, 434 U.S. 575, 584 (1978) (observing that the substantive prohibitions of the ADEA "were derived *in haec verba* from Title VII").

*Muldrow* made clear that circuit precedents requiring "a heightened threshold of harm" were no longer good law, specifically identifying among its examples of abrogated precedent a decision from this Court applying a "materially significant disadvantage" standard. 601 U.S. at 353 & n.1 (rejecting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 128 (2d Cir. 2004)). Indeed, the Supreme Court explained that its decision "changes the legal standard used in any circuit that has previously required 'significant,' 'material,' or 'serious' injury." 601 U.S. at 356 n.2; *see also Back v. Bank Hapoalim, B.M.*, No. 24-1064-cv, 2024 WL 4746263, at *2 (2d Cir. Nov. 12, 2024) (summary order) ("*Muldrow* … overruled our precedent, which required that the changes to a term or condition of employment be materially adverse."); *Arnold*, 142 F.4th at 470 ("There is no question that the district court incorrectly applied a pre-*Muldrow* 'materially adverse'

standard."); *Anderson v. Amazon.com, Inc.*, No. 23-cv-8347, 2024 WL 2801986, at *10 (S.D.N.Y. May 31, 2024) (explaining that *Muldrow* abrogated this Court's prior "materially adverse" standard).

Here, the district court failed to acknowledge *Muldrow* and instead applied a "materially adverse" standard that *Muldrow* explicitly repudiated. A-188-89 (defining adverse employment action as "a materially adverse change in the terms and conditions of employment" (quoting *Clarke-Green*, 2019 WL 13149583, at *7)). The district court's reliance on a pre-*Muldrow* material adversity standard—a standard *Muldrow* expressly rejected, 601 U.S. at 356 n.2—was thus error.

Respectfully, this Court should clarify that its prior "materially adverse" standard is no longer good law after *Muldrow*. Such guidance is necessary because the error the district court committed here appears to be a recurring one. Following *Muldrow*, numerous decisions from district courts within this Circuit have continued to apply the outdated "materially adverse" standard, without any mention of *Muldrow*, its "some harm" standard, or its clear abrogation of cases applying a heightened materiality standard. *E.g.*, *Schulman v. Dep't of Educ. of City of N.Y.*, No. 24-cv-8322, 2026 WL 573298, at *5 (S.D.N.Y. Mar. 2, 2026); *Daniels v. Hofstra Univ.*, No. 21-cv-

2920, 2025 WL 2783282, at *7 (E.D.N.Y. Sep. 30, 2025); *Byas v. Yonkers Pub. Schs.*, No. 23-cv-8437, 2025 WL 963977, at *10 (S.D.N.Y. Mar. 31, 2025); *McBeth v. City of N.Y.*, No. 23-cv-10389, 2025 WL 951439, at *10 (S.D.N.Y. Mar. 28, 2025).

Moreover, this Court has had only limited occasion to offer guidance on *Muldrow*'s impact. To date, this Court has directly addressed *Muldrow* in only one published opinion. *See Cangro v. N.Y.C. Dep't of Fin.*, --F.4th--, 2026 WL 2130187, at *10 (2d Cir. July 24, 2026) (applying *Muldrow* standard to ADA discrimination claim); *cf. Ziparo v. CSX Transp., Inc.*, 160 F.4th 314, 340 n.16 (2d Cir. 2025) (Federal Railroad Safety Act) (noting *Muldrow* but finding it unnecessary to opine on *Muldrow*'s impact on discriminatory hostile-work-environment claims). This Court has also mentioned *Muldrow* in a handful of unpublished opinions, but only one squarely addressed *Muldrow*'s impact on the adversity standard. *Back*, 2024 WL 4746263, at *2 (noting that *Muldrow* abrogated prior material adversity standard); *see Arnold v. Town of Camillus*, No. 24-2556-cv, 2025 WL 2699162, at *2 (2d Cir. Sep. 23, 2025) (summary order) (noting *Muldrow* but resolving case on other grounds and thus not "addressing the scope of *Muldrow*'s holding"); *Stidhum v. 161-10 Hillside Auto Ave, LLC*, No. 25-490, 2026 WL 761394, at *1-

3 (2d Cir. Mar. 18, 2026) (summary order) (similar). The lack of precedent from this Court on *Muldrow*'s impact militates in favor of further guidance.

### B. Under the correct standard, Eisenberg plausibly alleged at the motion-to-dismiss stage that the relevant employment actions caused "some harm" respecting his employment terms or conditions.

Applying the incorrect "materially adverse" standard, the district court found that the observation reports, investigations and associated disciplinary letters and problem code, misreported absences, and public reprimands were not actionable discrimination. A-189. The court did not explain this conclusion other than by citing pre-*Muldrow* caselaw as establishing a categorical rule that such employment actions were not materially adverse. A-189-90 (citing *Zoulas v. N.Y.C. Dep't of Educ.*, 400 F. Supp. 3d 25, 54-55 (S.D.N.Y. 2019), and *Morrison v. Potter*, 363 F. Supp. 2d 586, 591 (S.D.N.Y. 2005), for the proposition that disciplinary letters and reprimands are not adverse employment actions). These pre-*Muldrow* decisions, however, "requir[ed] allegations of … 'material' injury" and thus "did not survive *Muldrow*." *Thomas v. JBS Green Bay, Inc.*, 120 F.4th 1335, 1337 (7th Cir. 2024); *see Zoulas*, 400 F. Supp. 3d at 53-55 (applying "materially adverse" standard); *Morrison*, 363 F. Supp. 2d at 590 (same).

Moreover, a bright-line rejection of certain categories of employment actions is no longer appropriate after *Muldrow*. *See, e.g.*, *Walsh*, 169 F.4th at 340 (cautioning that, after *Muldrow*, "there is no one-size-fits-all answer" for whether a performance improvement plan qualifies as an adverse employment action). Instead, *Muldrow* requires a "fact-intensive" inquiry into whether the specific employment action in question adversely "affected the terms or conditions of [the plaintiff's] employment." *Id.* at 341.

Eisenberg plausibly alleged that the employment actions the district court rejected here met that standard. At the pleading stage, a plaintiff need not provide a detailed description of the harm suffered to satisfy *Muldrow*. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (pleading standard does not require "detailed factual allegations"); *Thomas*, 120 F.4th at 1336-38 (concluding that plaintiff's complaint satisfied *Muldrow*'s "some harm" standard and explaining that it is improper to "[d]emand[] details about loss in the complaint—as opposed to the summary-judgment stage"). Instead, a complaint need only "contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *see*

*Littlejohn v. City of N.Y.*, 795 F.3d 297, 306 (2d Cir. 2015) ("all inferences are drawn in the plaintiff's favor" on a motion to dismiss).

Eisenberg clears that bar here. First, Eisenberg alleged that the poor observation reports and the disciplinary letters and associated problem code in his personnel file directly impacted his ability to acquire additional paid work. According to the Amended Complaint, the low ratings on his observation reports prevented him from obtaining future paid per-session opportunities. *See* A-44 (¶ 130) (explaining that "the criteria for receiving per-session work were amended regarding observation rating so as to deny automatically any application for per-session work Plaintiff presented in the future"). And the problem code led to the withdrawal of a summer teaching position (although the position was subsequently restored). A-51-52 (¶¶ 170-71). Drawing all inferences in Eisenberg's favor, it is plausible that the observation reports, as well as the disciplinary letters and associated problem code, adversely affected his terms or conditions of employment by "tarnishing [his] permanent record" and "dampening [his] prospects" of future employment opportunities. *Anderson*, 2024 WL 2801986, at *11; *see also Walsh*, 169 F.4th at 340 (performance improvement plan could satisfy *Muldrow* standard if it "deprive[d] an employee of

potential advancement opportunities" (citing *Anderson*, 2024 WL 2801986, at *11-12)); *Ahmed v. Hamtramck Pub. Schs.*, 178 F.4th 975, 985 (6th Cir. 2026) (Title IX claim) (plaintiff satisfied *Muldrow* standard at motion-to-dismiss stage by pleading, *inter alia*, that she suffered "reputational harm resulting from [employer's] public announcement of a pending investigation into her supposed misconduct"); *Dawson v. Conn. Dep't of Corr.*, No. 3:25-cv-210, 2026 WL 632674, at *5 (D. Conn. Mar. 6, 2026) (allegations of conduct that "could be reasonably viewed as obstructing Plaintiff's ability to advance professionally" were "sufficient to demonstrate that Plaintiff experienced harm under *Muldrow*, for purposes of a motion to dismiss").

Eisenberg also alleged a connection between the misreporting of his absences and his employment terms and conditions, namely, that the absences were incorrectly charged against his salary, resulting in a loss of compensation. *See* A-51, A-55, 57 (¶¶ 168, 191, 206) (alleging that misreported absences resulted in reduction of salary); 42 U.S.C. § 2000e-2(a)(1) (discrimination "with respect to … compensation" is actionable); *Tumbleson v. Lakota Loc. Sch. Dist.*, 175 F.4th 773, 780 (6th Cir. 2026) (ADA claim) ("One might describe the denial of paid leave as a 'harm respecting' a 'term or condition of employment.' After all, an unpaid employee seems

'worse off' than a paid one." (quoting *Muldrow*, 601 U.S. at 355, 359)); *Dawson*, 2026 WL 632674, at *5 (allegations that employer docked two of plaintiff's work hours despite representing she could use accrued time satisfied *Muldrow* standard). And Eisenberg's allegations that management berated, ridiculed, and humiliated him in front of students and colleagues—exacerbating his migraines and causing him emotional distress—also plausibly left him "worse off." *Muldrow*, 601 U.S. at 359; *see* A-26-27, A-30, A-32, A-41, A-44-45, A-49 (¶¶ 33, 36, 56, 67, 115, 132, 158, 189); *Desiderio v. Hudson Techs., Inc.*, No. 22-cv-541, 2025 WL 1285278, at *10-11 (S.D.N.Y. May 2, 2025) (reasonable jury could conclude that employer "publicly humiliat[ing] plaintiff," "undermin[ing] her reputation," and berating her "left [her] 'worse off' with respect to the terms and conditions of her employment" by "tarnish[ing] her reputation at work" and exacerbating underlying medical conditions that caused her to take medical leave); *see generally Muldrow*, 601 U.S. at 354-55 (clarifying that Title VII is not limited to "economic or tangible" harms (citation omitted)).

## II. The district court erred by subjecting Eisenberg's ADEA retaliation claim to the same adversity test it used for his discrimination claim.

The district court further erred by assuming that only the conduct it deemed adverse for Eisenberg's discrimination claim could be adverse in the context of his retaliation claim. *See* A-193 (cross-referencing discussion of Eisenberg's discrimination claim and defining the scope of adverse employment actions identically). This was incorrect because distinct adversity standards apply to the two claims.

In the retaliation context, the relevant question is whether "a reasonable employee would have found the challenged action materially adverse," that is, that "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks omitted).[5] This standard differs from the one applied in the discrimination context. *Id.* at 67 (anti-discrimination and anti-retaliation provisions "are

[5] While *Burlington Northern* addressed a Title VII retaliation claim, courts also apply that standard in the ADEA context, given the nearly identical language in the two statutes' anti-retaliation provisions. *Compare* 29 U.S.C. § 623(d), *with* 42 U.S.C. § 2000e-3(a); *see, e.g.*, *Carr v. N.Y.C. Transit Auth.*, 76 F.4th 172, 178 (2d Cir. 2023). We thus rely on Title VII caselaw in analyzing whether Eisenberg has alleged actionable retaliation.

not coterminous"); *Muldrow*, 601 U.S. at 357-58 (discussing differences between the two standards); *Carr v. N.Y.C. Transit Auth.*, 76 F.4th 172, 178-79 (2d Cir. 2023) (same). Although *Burlington Northern*'s "materially adverse" standard has "some linguistic overlap with the heightened threshold of harm rejected by *Muldrow*," it "was adopted for reasons peculiar to the retaliation context" and thus "*Muldrow*'s analysis of discrimination claims leaves it unchanged." *Herkert v. Bisignano*, 151 F.4th 157, 166 (4th Cir. 2025) (internal quotation marks and alterations omitted).

Under the correct standard, Eisenberg plausibly alleged at the motion-to-dismiss stage that the employment actions the district court rejected could dissuade a reasonable worker from engaging in protected activity. Eisenberg's "poor performance evaluation[s] could very well deter a reasonable worker from complaining," *Vega*, 801 F.3d at 92, as could the investigations and associated disciplinary letters and problem code in his personnel file, given the alleged detrimental effects these all had on his ability to obtain paid per-session opportunities or summer work. *See supra* p. 13 (describing allegations to this effect); *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 165 (2d Cir. 2011) (applying *Burlington Northern* standard in context of Family and Medical Leave Act retaliation claim and concluding

that letter of reprimand could deter exercise of protected activity by "reduc[ing] an employee's likelihood of receiving future bonuses, raises, and promotions"); *Velikonja v. Gonzales*, 466 F.3d 122, 124 (D.C. Cir. 2006) (per curiam) (investigation that "place[s] a cloud over [plaintiff's] career" and interferes with career advancement could satisfy *Burlington Northern* standard (citation omitted)); *Uddin v. City of N.Y.*, 316 F. App'x 4, 5-6 (2d Cir. 2008) (disciplinary charges that "are recorded in an employee's file and are weighed in promotion decisions" could dissuade exercise of protected activity).

In addition, Eisenberg's loss of salary stemming from the misreported absences—which the Department still has not remedied—plausibly satisfies the *Burlington Northern* standard. *See* A-51, A-55-57 (¶¶ 168, 191, 197, 206); *Burlington N.*, 548 U.S. at 72-73 (thirty-seven-day suspension without pay could deter exercise of protected activity, even where employer ultimately repaid the lost wages); *Vega*, 801 F.3d at 91 (wrongful deduction of $738.92 from plaintiff's paycheck for sick leave, which employer failed to correct, could satisfy *Burlington Northern* standard); *St. Juste v. Metro Plus Health Plan*, 8 F. Supp. 3d 287, 325-26 (E.D.N.Y. 2014) (requiring plaintiff to use unpaid leave satisfies *Burlington*

*Northern* standard by forcing him "to give up actual pay which is a material benefit").

Eisenberg's allegations that management ridiculed him, embarrassed him, and reprimanded him in front of colleagues and students could also plausibly dissuade the exercise of protected activity.[6] *See* A-26, A-30, A-41, A-44, A-49, A-55 (¶¶ 33, 56, 115, 132, 158, 189); *Vogel v. CA, Inc.*, 662 F. App'x 72, 76 (2d Cir. 2016) (claim that supervisor "was persistently hostile toward [plaintiff] on team conference calls, made jokes about him in front of his colleagues, and removed him from meetings" could satisfy *Burlington Northern* standard). And, to the extent these allegations implicate harm that occurred outside the workplace or did not impact Eisenberg's terms or conditions of employment, they can still fall within the anti-retaliation provision's scope. *See Burlington N.*, 548 U.S. at 63-64 (explaining that anti-retaliation provision, unlike anti-discrimination

---

[6] Where a plaintiff claims that retaliation took the form of harassment, the correct inquiry is whether the harassment met the *Burlington Northern* "dissuade-a-reasonable-worker" standard rather than the "severe or pervasive" standard for hostile-work-environment claims in the discrimination context. *E.g.*, *Carr*, 76 F.4th at 180-81; *Stratton v. Bentley Univ.*, 113 F.4th 25, 43-44 (1st Cir. 2024); *Monaghan v. Worldpay US, Inc.*, 955 F.3d 855, 862 (11th Cir. 2020).

provision, "is not limited to discriminatory actions that affect the terms and conditions of employment" and can extend to actions that "cause[] … harm *outside* the workplace"); *Carr*, 76 F.4th at 179 ("[T]here are adverse actions that would suffice to make out a prima facie case for retaliation because they are 'materially adverse' but would be insufficient to make out a prima facie case for discrimination because they did not alter the terms and conditions of employment.").

## CONCLUSION

For the foregoing reasons, this Court should vacate the district court's dismissal of Eisenberg's ADEA discrimination and retaliation claims and remand for further proceedings.

Respectfully submitted,

CATHERINE ESCHBACH
Acting General Counsel

CHRISTOPHER LAGE
Deputy General Counsel

JENNIFER S. GOLDSTEIN
Associate General Counsel

JEREMY D. HOROWITZ
Assistant General Counsel

s/ Chelsea C. Sharon
CHELSEA C. SHARON
Attorney
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Office of General Counsel
131 M St. N.E., 5th Floor
Washington, D.C. 20507
(202) 921-2889
chelsea.sharon@eeoc.gov

August 6, 2026

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) and 32(a)(7)(B), and Second Circuit Local Rules 29.1(c) and 32.1(a)(4), because it contains 3,894 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Book Antiqua 14 point.

s/ Chelsea C. Sharon
CHELSEA C. SHARON
Attorney
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Office of General Counsel
131 M St. N.E., 5th Floor
Washington, D.C. 20507
(202) 921-2889
chelsea.sharon@eeoc.gov

August 6, 2026

## CERTIFICATE OF SERVICE

I certify that on August 6, 2026, I electronically filed the foregoing brief in PDF format with the Clerk of Court via the Appellate Case Management System (ACMS). I certify that all counsel of record are registered ACMS users, and service will be accomplished via ACMS.

s/ Chelsea C. Sharon
CHELSEA C. SHARON
Attorney
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Office of General Counsel
131 M St. N.E., 5th Floor
Washington, D.C. 20507
(202) 921-2889
chelsea.sharon@eeoc.gov